PENNELL, Appellant, v. ENNIS, etc., Respondent.

St. Louis Court of Appeals, June 11, 1907.

1. GIFTS: Checks: Inter Vivos and Causa Mortis. A check drawn on the drawer's general account in bank will not constitute a gift to the payee of the the amount of the check if it is neither accepted nor paid prior to the death of the drawer; this is true whether the transaction is regarded as *inter vivos or causa mortis*; a complete delivery is essential to a valid gift.

2. ———: ———: ———: Intention. A woman just before her death gave two checks to her daughter for sums in excess of the amount she had in the banks on which they were drawn, thereby showing an intention to give her daughter the amount of the checks, but died before they were presented. The gift was incomplete and failed notwithstanding the intention and it could not be enforced in equity as a trust.

3. ———: ———: Assignment of Fund. Such checks not corresponding with the amount deposited to the drawer's credit did not constitute an assignment of the fund on which the checks were drawn.

Appeal from Knox Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*F. H. McCullough* for appellant.

(1) The gift was as complete as it could have been made and nothing remained which could have been done by the parties to complete same. Both the donor and the donee of the checks had done everything in their power to make the gift complete. 8 Am. and Eng. Ency. of Law (1 Ed.), 1321. Bromley v. Brunton, L. R. 6 Eq.

275; 14 Am. and Eng. Ency. of Law (2 Ed.), 1063; Rolls v. Pierce, 5 Ch. D. 730.   (2) It is not necessary that any consideration for the giving of the checks be shown, other than the fact that the donee was a daughter of the donor, that was sufficient, it was a good consideration. Meyer v. Koehring, 129 Mo. 23.   (3) This cause should have been submitted to the jury, as all questions relating to the delivery as well as the capacity of donor are for the determination of the jury. Dunn v. Bank, 109 Mo. 90; Jones v. Jones, 43 S. W. 412.

*L. F. Cottey* for respondent.

A gift to be valid must be completed in the lifetime of the donor.   A check is not an appropriation of so much of the drawer's money in the possession of the bank, but a request or order to the bank to pay the payee the sum named when presented.   The check may be revoked by the donor, and the death of the drawer defeats the gift so far as it concerns the donee.   This is the well established rule as to both *causa mortis* and *inter vivos gifts*.   It is immaterial whether this case be considered as a gift *inter vivos*, or a *donatio causa mortis*. In either event it was not completed in the lifetime of the donor and the plaintiff cannot recover.   Illustrations and applications of the principle here announced may be found in the following citations:   8 Am. and Eng. Ency. Law, 1313-1321, 1342-1344; 14 Am. and Eng. Ency. Law, 1030, 1031, 1052-1063; Dunn v. Bank, 109 Mo. 100; Walter v. Ford, 74 Mo. 195; Bieber's Administrator v. Boeckmann, 70 Mo. App. 508; McCord's Administrator v. McCord, 77 Mo. 174; Tomlinson v. Ellison, 104 Mo. 105; School District v. Sheidley, 138 Mo. 683; In re Estate of Soulard, 141 Mo. 657; Banking Co. v. Miller, 190 Mo. 662.

GOODE, J.—Plaintiff is the daughter of Mrs. Lucinda W. Morse, deceased, and defendant the administrator of the estate of said deceased.   This proceeding

commenced in the probate court on a demand presented against the estate and based on the following bank checks:

"Edina, Mo., Oct. 21, 1905.
THE BANK OF EDINA,
Pay to Mattie F. Pennell ...... $250.00
   Two Hundred and Fifty ........Dollars.
      In Current Funds.

L. W. MORSE."

"Novelty, Mo., Oct. 21, 1905.
THE LYCAN BANK OF EDINA.
Pay to Mattie F. Pennell, or .... $250.00
   Two and Fifty ............... Dollars.
      L. W. MORSE."

Judgment was given in favor of plaintiff in the probate court, but on a trial anew in the circuit court, to which the case was appealed, the jury returned a verdict for defendant pursuant to a peremptory instruction given at the conclusion of the evidence for plaintiff. The checks which are the foundation of the demand, were signed a few hours before the death of Mrs. Morse and when she was very low with illness. She had been in poor health for some time before, having suffered a stroke of paralysis which rendered one side of her body helpless. The date of the checks is October 21, 1905, but this date was inserted by mistake, as the checks were drawn two days later, on the twenty-third. Whether Mrs. Morse then realized how near her end was, is uncertain on the proof. About three o'clock in the afternoon she asked plaintiff to get her check book and when it was put in her hands, wrote the two checks in question, handed them to her granddaughter, Daisy Pennell, the daughter of plaintiff, telling her to give them to plaintiff for the latter to use for any purpose she wished. This incident occurred before the physician who had been attending the deceased, was sent for; but it must

have been but a few minutes before; for he arrived at the house about four o'clock in the afternoon, and it was necessary for the messenger to go to the town of Novelty, some three miles away, and summon him, and for the physician to come from said town. When he arrived he saw Mrs. Morse could not live long and, as stated, she died the same day. At the date the checks were signed, the deceased had on deposit in the Lycan Bank the sum of ninety dollars, which was subject to check and $336.-58 not subject to check, but covered by a time certificate to fall due either six or twelve months after its date. She had a deposit in the Bank of Edina, on which the other check was drawn, of $69.64, which was subject to check. The figures in the check on the Lycan Bank called for $250 to be paid to plaintiff; whereas the writing was for "Two and 50 . . . . Dollars." At the time Mrs. Morse signed the checks she said they amounted to $500, showing that her intention was to make each check for $250. The drift of the cross-examination indicates that if the defendant had been called on to put in evidence, he would have defended on the ground that the deceased was incompetent to transact business when the checks were given. But as the court directed a verdict on the evidence for defendant, no such question is before us. There is evidence tending to prove Mrs. Morse knew what she was doing and that her purpose was to give her daughter $500. Plaintiff's counsel has treated the transaction as constituting a gift *inter vivos* and not *causa mortis.* We have no doubt its real character was that of a gift *causa mortis;* but this point is immaterial. The essential question is whether or not the delivery of the checks was a valid gift, they not having been accepted or paid prior to the death of the drawer, and the rule of law controlling the decision is the same whether the transaction is regarded as *inter vivos* or *causa mortis.* The current of authority seems to be unbroken in favor of the proposition that a check drawn on the draw-

er's general account in a bank, will not constitute a gift to the payee of the amount of the check if it is neither accepted nor paid prior to the death of the drawer. This is because a complete delivery is essential to a valid gift, and the check of the donor is looked on as no more than his promise to give the amount written. [1 Story, Eq. Jur. (13 Ed.), sec. 607a, note 6, 610; Harris v. Clark, 3 N. Y. 93; McKenzie v. Downing, 25 Ga. 669; Thresher, Admr., v. Dyer, Excr., 69 Conn. 404; Simmons v. Cincinnati, etc., Co., 31 Ohio St. 457, 27 Am. Rep. 521; Cloyes v. Cloyes, 36 Hun (N. Y.) 145; Rolls v. Pearce, L. R. 5 Ch. Div. 730; In re Mead, L. R. 15 Ch. Div. 651; In re Beak's Estate, L. R. 13 Eq. 489; Bromloy v. Brunton, L. R. 6 Eq. 257.] Some of those cases consider the effect of the delivery of a donor's check when the gift is *inter vivos* and others when it is *causa mortis*. The same rule is applied to attempted gifts by the delivery of the donor's own promissory note. [School Dist. v. Sheidley, 138 Mo. 672, 40 S. W. 656; West v. Cavins, 74 Ind. 265; Flint v. Patee, 33 N. H. 520; 66 Am. Dec. 742; Holley v. Adams, 16 Vt. 206, 42 Am. Dec. 508; Grymes v. Hone, 49 N. Y. 17, 10 Am. Rep. 717.] Cases are reported in which the gift was held valid on exceptional facts; as where the check was certified or paid prior to the death of the donor. Any step which changes the transaction from a mere executory and voluntary promise by the donor into an executed transaction, will validate it. Obligations or checks drawn by third parties in favor of the donor, are regarded as the latter's property and which he may give away. The rule is thus stated in a standard treatise:

"Whatever doubt may have once been entertained, the rule is now well established that all things in action which consist of the promises or undertakings of third persons, not the donor himself, of which the legal or equitable title can pass by delivery, may be the subjects of a valid gift, including promissory notes, bills of

exchange, checks, bonds, mortgages, savings-bank pass books, certificates of deposits, policies of insurance, and the like; and it is settled by the recent cases that a valid donation of negotiable instruments may thus be made without indorsement. Debts due from the donee himself may be donated, either by giving back to him the written evidence of debt, or by canceling or destroying same, or by delivering the receipt. Things in action, on the other hand, in which the donor himself is the debtor party, cannot be the subject-matter of a valid gift. The reason is that, whatever be their form, these gifts would amount to nothing more than the donor's own naked executory *promise* to pay at some further day, without any consideration to support it; and such a voluntary promise cannot be enforced against the donor nor against his executors or administrators. [3 Pomeroy, Eq. Jur. (3 Ed.), sec. 1148.]

Equity does not lend assistance to voluntary dispositions of property while they are yet executory. If such dispositions are attempted in a mode which fails for want of compliance with some indispensable rule of law, they will not be carried into effect in another mode to which the rule may not be essential. For example, if a gift is attempted without a complete delivery of the property meant to be given, the intention to give will be frustrated, and a court of equity will decline to treat the transaction as equivalent to a declaration by the would-be donor to hold the property in trust for the donee. [Bispham, Equity (6 Ed.), sec. 66.] This is according to the principle that executory agreements not based on a consideration, are unenforceable — *ex nudo pacto non oritur actio*. And the merely meritorious consideration of kinship does not suffice in equity any more than at law, save in the instance of the defective execution of a power. [2 Story, Eq. Jur. (13 Ed.), sec. 793b; 3 Pomeroy (3 Ed.), sec. 996 et seq.; Young v. Young, 80 N. Y. 437; In re Soulard's Estate, 141 Mo. 642, 43 S. W.

617; Harris Banking Co. v. Miller, 190 Mo. 640, 666.]
Hence if Mrs. Morse, when she signed the checks and
handed them to plaintiff, meant to give the latter $500,
we cannot construe those acts to have created a trust
in plaintiff's favor. Neither can they be treated as an
assignment of the funds on deposit in the banks, merely
in order to effectuate the gift, nor unless they consti-
tute an assignment according to the settled rules of
equity. The enforcement of imperfect gifts, both *inter
vivos* and *causa mortis,* has been refused in cases where
there could be no doubt of the intention to make a dona-
tion. The rule of law that delivery is essential to a gift,
and also the rules as to what constitutes delivery, have
been rather strictly adhered to in equity, thereby defeat-
ing occasionally the plain purpose of donors. To avoid
this result courts have now and then found that the real
purpose was to settle the property in trust in favor of
the alleged donee instead of to give it to him outright.
In Harris Banking Co. v. Miller and In re Soulard's
Estate, supra, the Supreme Court of this State managed
to extract trusts from the circumstances in proof. But
those decisions recognized the rule that a trust cannot
be raised if a gift was intended, or unless the elements,
of a trust appear. The court rejected the theory of an
intended gift *in praesenti,* of the property in dispute in
the two cases, because there had been no complete de-
livery — no immediate and unconditional surrender of
the property to the party to be benefitted or any one for
him; but on the contrary, a reservation by the owners
of an interest in and a degree of control over it. Having
put aside the intention to make a gift on those facts,
other circumstances were found to exist by the court,
which were deemed sufficient to prove that an executed
trust had been settled by the owners of the property in
favor of the objects of their bounty. In the case at bar
the checks were signed and turned over to the payee,
Mrs. Pennell. They were not retained by Mrs. Morse,

nor handed to a third person to hold for Mrs. Pennell, nor did the latter receive them to hold for the benefit of any one but herself. We know not who could be considered a trustee for plaintiff, or what was said or done pointing to an intention of Mrs. Morse to settle the checks, or the money they called for, in trust. On the contrary everything that transpired reveals an intention to make an absolute gift to plaintiff of $500, and to hold otherwise we would have to misconstrue the facts. The gift having failed because attempted in a wrong mode, it cannot be carried into execution as a trust.

Our next inquiry will be whether the signing and delivery of the checks amounted to a present and completely executed assignment of the funds in deposit in the banks, whereby the title was passed to plaintiff. A check drawn by a depositor on his general account and not on a special fund, constitutes no assignment of the amount of the check, either at law or in equity. [Dickinson v. Coates, 79 Mo. 250; Akin v. Jones, 93 Tenn. 353; Hopkinson v. Forster, L. R. 19 Eq. 74; Citizens Bank v. First Nat. Bank, L. R. 6 H. L. 352; Insurance Co. v. Simmons, 30 Pa. St. 299; Laclede Bank v. Schuler, 120 U. S. 514.] Courts have said that if the check is drawn for the entire balance of the drawer, it will be treated as an assignment of it, if intended as such. [Kahnweiler v. Anderson, 78 N. C. 133; Kingman v. Perkins, 105 Mass. 111; Taylor's Estate, 154 Pa. St. 183; Bispham, Equity (6 Ed.), sec. 167; 3 Pomeroy, Eq. Jur. (3 Ed.), sec. 1284.] This rule seems vague, but whether sound or not, it has no application to the present cause. If the deceased was not so far gone mentally as to be unfit to transact business, it looks like she must have known the checks she wrote did not correspond with her bank balances. She drew a check on the Lycan Bank for $250, a sum much exceeding the fund she had on deposit there subject to check, and much less than the deposit covered by the

time certificate. The check on the Bank of Edina was far in excess of her balance in said bank. Hence there is no indication in what the deceased did, of an intention to assign her deposits in the two banks to plaintiff. If this intention was proved, equity might not attach importance to the form in which it was manifested. [Bispham, Equity, sec. 167.] But the only conclusion warranted by the evidence is that the deceased intended to give her daughter $500 and attempted to do this in the form of two checks of $250 each, which could not be paid out of the banks on which they were drawn, and so the deceased must have expected them to be paid out of her general estate. We can see the transaction in no other light than that of an imperfect gift, void at law and not enforceable in equity.

The judgment is affirmed. All concur.