## ESTATE OF JOHN F. DODGE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4640.  Promulgated August 3, 1928.

*Joseph E. Davies, Esq., John W. Davis, Esq., Arthur J. Lacy, Esq., Clarence E. Wilcox, Esq., Franklin D. Jones, Esq., Sidney T. Miller, Esq., Herbert Pope, Esq., E. Barrett Prettyman, Esq., Lewis H. Pad-*

dock, Esq., *Raymond H. Berry, Esq., Montgomery B. Angell, Esq., Luman W. Goodenough, Esq., Russell A. McNair, Esq.,* and *Raymond N. Beebe, Esq.,* for the petitioner.

*A. W. Gregg, Esq., W. Hall Trigg, Esq:, Floyd F. Toomey, Esq., E. C. Lake, Esq.,* and *J. F. Greaney, Esq.,* for the respondent.

BEFORE STERNHAGEN, MARQUETTE, AND VAN FOSSAN.

214

OPINION.

MARQUETTE: This proceeding is one of nine proceedings consolidated for hearing because a large volume of the evidence was relevant and material to all of them, and having in common two issues, as follows: (1) Whether, under the circumstances shown by the evidence, the question of the fair market price or value on March 1, 1913, of the stock of the Ford Motor Co. and the basis for computing the gain on its sale in 1919, was open to the respondent in determining a deficiency or rejecting a claim in abatement antecedent to this proceeding, and is open for redetermination in this proceeding, and, if

so, (2) what was the fair market price or value of the stock of the Ford Motor Co. on March 1, 1913.

These issues have been decided by this Board in the cases of *James Couzens, supra,* and *Rosetta V. Hauss, supra,* and upon the authority of those decisions we hold that the respondent had the right to determine the fair market price or value on March 1, 1913, of the petitioner's stock in the Ford Motor Co., and upon the evidence we find that the fair market price or value of said stock on March 1, 1913, was at the rate of $10,000 per share. Therefore, the basis for computing the gain from the sale of the stock owned by John F. Dodge was $10,000,000 and the gain was $2,500,000 instead of $3,010,660 as returned.

The original petition and answer herein raised only the two issues above stated. However, by an amended answer in the nature of a cross-petition, the respondent affirmatively alleged that there were wrongfully claimed and taken in the return filed for John F. Dodge for the year 1919, certain deductions on account of contributions or gifts alleged to have been made by John F. Dodge in that year; that there was omitted from the return, income in the amount of $225,000 realized by him in connection with the Berger option, and that his income for the year 1919 should be adjusted accordingly. The petitioners filed a replication to the amended answer, denying all the allegations of new matter contained in the amended answer, and also alleging that the assessment of any additional tax arising from the disallowance of the deductions mentioned, and from the addition to income of said amount of $225,000, is barred by the statute of limitations.

Three additional issues are therefore raised by the amended answer and replication, namely: (1) Is the assessment of the additional tax, in so far as it arises from the respondent's action in disallowing the deductions mentioned and in adding to the income of John F. Dodge for 1919 the said amount of $225,000, barred by the statute of limitations? (2) Were the amounts of the contributions or gifts in question proper deductions in computing the net income of John F. Dodge for 1919? (3) Did John F. Dodge realize any income in 1919 in connection with the Berger option?

In considering the question of whether assessment and collection of the additional tax first set up by the respondent in his amended answer are barred by the statute of limitations, we do not deem it necessary to engage in an extended discussion or exposition of the law applicable thereto. While we are of the opinion that independently of any written waiver or consent executed by the petitioner and the respondent, assessment and collection of such additional tax are, under the evidence herein, not barred, we find that the petitioner

Howard B. Bloomer and the respondent have executed such a waiver or consent, which effectually disposes of the question presented. The income-tax return of John F. Dodge for the year 1919 was filed on April 30, 1920. On January 31, 1925, Bloomer, as administrator with the will annexed of the estate of John F. Dodge, and the respondent, executed a written consent which provided that they—

* * * Hereby waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year 1919 under existing revenue acts, or under prior revenue acts. This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1925, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

The deficiency letter was mailed to the petitioner on April 7, 1925, and the petition herein was filed June 4, 1925, and if said consent was valid, the time within which assessment of "taxes due under any return made by or on behalf of said taxpayer for the year 1919" was thereby extended by the number of days between the date of mailing of the deficiency letter and the date of the final decision of this Board on the appeal.

But the petitioners urge that under the law of Michigan an executor or administrator can not waive the running of the statute of limitations as to claims against the estate, citing *Durfee* v. *Abbott*, 50 Mich. 278; *Hugh* v. *Dowd*, 86 Mich. 412; *Draper* v. *Brown*, 153 Mich. 120, and that the consent executed by Bloomer is invalid and of no force and effect. This argument, however, presents no difficulty here. Regardless of what the law of Michigan is on the subject, it can not operate to interfere with the power of the United States to lay and collect taxes. As pointed out in *Aldridge* v. *United States*, 64 Ct. Cls. 424, Congress has " power not only to provide the method of laying and collecting taxes, but the method of refunding taxes illegally collected. It had the power in prescribing that method to provide not only the statute of limitation but the right to waive the limitation, and this right was given to the taxpayer. It can not be contended that the power of Congress to confer the right can be taken away by a state statute, much less by a decision of a state court. To say that the right can be granted or the privilege of exercising it can be limited or taken away by a state statute or a decision of a state court, would be in effect to destroy the right and thus nullify the act of Congress." The court held that a waiver executed by Mary S. Aldridge as executrix, pursuant to the provisions of the

Revenue Act of 1921, was valid notwithstanding the fact that the courts of Mississippi, which had jurisdiction of the estate, had held that a personal representative of a decedent could not waive the statute of limitations as to a debt asserted against the estate. To the same effect is *Davis* v. *United States*, 27 Fed. (2d) 630. We agree with the reasoning and the conclusions of the courts in the two cases just cited and consider that the decisions therein should be followed here. We accordingly hold that the written consent executed by Bloomer as administrator with the will annexed of the estate of John F. Dodge on January 31, 1925, is valid and that the respondent having made claim for the additional taxes in question before the hearing of this proceeding, this Board has jurisdiction to determine the correct amount of the deficiency, even though the amount so determined is greater than the amount set forth in the deficiency notice. Section 274 (e) of the Revenue Act of 1926.

The petitioners urge, however, that since section 274 (a) of the Revenue Act of 1924 provides that, "If, in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the taxpayer * * * shall be notified of such deficiency by registered mail," it only provides for a notice of deficiency in the case of a tax imposed by the Revenue Act of 1924 and does not cover cases of deficiencies in taxes imposed by prior acts, and that the deficiency notice herein, since it relates only to taxes for 1919, did not operate to suspend the running of the statute of limitation as provided by section 277 (b) of the Revenue Act of 1924. They say, therefore, that the return of John F. Dodge having been filed on April 15, 1920, and no deficiency notice having been sent to the petitioners within the meaning of section 274 (a) of the Revenue Act of 1924, assessment and collection of the additional tax became barred on April 15, 1925. We think this contention is without merit. Section 280 of the Revenue Act of 1924 provides:

SEC. 280. If after the enactment of this Act the Commissioner determines that any assessment should be made in respect of any income, war-profits, or excess-profits tax imposed by the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, or the Revenue Act of 1921, or by any such Act as amended, the amount which should be assessed (whether as deficiency or as interest, penalty, or other addition to the tax) shall be computed as if this Act had not been enacted, but the amount so computed shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including the provisions in case of delinquency in payment after notice and demand) as in the case of the taxes imposed by this title, except as otherwise provided in section 277.

It is clear from section 280 of the Revenue Act of 1924 that if, after the enactment of the Revenue Act of 1924 the Commissioner de-

218

termined that additional taxes were due from a taxpayer under the Revenue Acts of 1916, 1917, 1918, or 1921, he was required to compute them under the appropriate prior act and to assess and collect them in the same manner as he would assess and collect taxes under the Revenue Act of ·1924. Such assessment and collection under the Revenue Act of 1924 required that a deficiency notice be sent to the taxpayer and, if sent prior to the running of the statute of limitations against assessment, the notice operated to toll the statute under section 277 (b) of the Revenue Act of 1924. We are of the opinion that a deficiency notice was authorized and required in the instant case, and that such notice having been mailed to the petitioners prior to April 15, 1925, it operated under section 277 (b) of the Revenue Act of 1924 to extend the period within which assessment and collection of the deficiency might be made, and also to extend the period within which the waiver filed by the petitioners shall remain in effect.

The contributions or gifts which are involved in this proceeding were claimed as deductions from gross income on the return filed for John F. Dodge for the year 1919 under authority of section 214 (a) (11) of the Revenue Act of 1918, which provides that in computing the net income of individuals there shall be allowed as deductions:

(11) Contributions or gifts made within the taxable year to corporations organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual, or to the special fund for vocational rehabilitation authorized by section 7 of the Vocational Rehabilitation Act, to an amount not in excess of 15 per centum of the taxpayer's net income as computed without the benefit of this paragraph. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary. In the case of a nonresident alien individual this deduction shall be allowed only as to contributions or gifts made to domestic corporations, or to such vocational rehabilitation fund.

It is clear from the record herein that the contributions or gifts were actually made to corporations of the class enumerated in section 214 (a) (11) of the Revenue Act of 1918. On that proposition there appears to be no dispute between the parties to this proceeding. They do not agree, however, as to when the contributions or gifts were made, the petitioners contending that they were made in 1919 and are deductible from income for that year, and the respondent, that they were not made until 1920 within the meaning of the Revenue Act.

The evidence shows that the books of John F. Dodge were kept and that the returns of income were made on the cash receipts and disbursements basis. It was the custom, however, of his bookkeeper

or secretary to enter all checks in the check register and ledger as disbursements for the year in which they were issued, and it is urged by the petitioners that such a method is proper when books are kept on the cash receipts and disbursements basis and clearly reflect income, and that the checks drawn by Dodge on December 31, 1919, to the Salvation Army, the Presbyterian Church, and the Detroit Patriotic Fund, are proper deductions from income for 1919 although they were not paid until 1920. But as we have pointed out in *Chatham & Phenix National Bank*, 1 B. T. A. 460:

> * * * Nor do we think the method of bookkeeping employed in accounting for discount could make it income if it did not fall within the definition of income. The mere placing of amounts on the books and reporting them as income can not change the facts any more than the placing of losses on the books constitute them proper deductions if they are not such in fact. The facts must control, and bookkeeping entries are only evidence of the facts.

See also *Even Realty Co.* 1. B. T. A. 355, and *B. B. Todd*, 1. B. T. A. 662. Regardless, therefore, of the method by which these checks were treated by Dodge's bookkeeper, we must look to the facts and ascertain therefrom whether the contributions or gifts in question were made in 1919 or 1920 within the meaning of the Revenue Act of 1918.

In *C. H. Musselman*, 1. B. T. A. 41, we held that where a taxpayer on the accrual basis made a subscription to a charitable organization in 1918 and liability for payment fully attached in that year, the contribution was made in 1918 within the meaning of the Revenue Act of 1918 and was a proper deduction from 1918 income, although the subscription was not paid until 1919. We apprehend that conversely, if a taxpayer is on the cash receipts and disbursements basis, a contribution is not *made* even though liability for payment has attached, until it is completed by payment either in money or money's worth.

It is well settled in the United States that one can not make his own check the subject of a gift so that in the absence of payment it can be enforced against the donor or his representatives. In theory of law the attempted gift of a check is not executed by delivery until the bank has paid, accepted, or certified it. *Second National Bank* v. *Williams*, 13 Mich. 282; *Burrows* v. *Burrows*, 240 Mass. 485; *Guild* v. *Eastern Trust & Banking Co.*, 122 Me. 514; *Provident Institution* v. *Sisters of the Poor*, 87 N. J. Eq. 424; affd. 88 N. J. Eq. 349; *Simmons* v. *Cincinnati Savings Society*, 31 Ohio State 457; *Pennell* v. *Ennis*, 126 Mo. App. 355; *Montpelier Seminary* v. *Smith*, 69 Vt. 283. This rule is founded on the lack of consideration for the check and the fact that it may be revoked by the donor before its presentation for payment and is revoked by the death of the donor. But the petitioners urge that the checks involved in this proceeding did

not constitute mere gifts, but were in payment of enforceable subscription or contribution contracts, or were themselves enforceable subscription or contribution contracts which were worth their face value. In support of this contention they cite *Underwood* v. *Waldron*, 12 Mich. 73; *Comstock* v. *Howd*, 15 Mich. 237; *Allen* v. *Duffie*, 43 Mich. 1; *First Universalist Church* v. *Pungs*, 126 Mich. 670; *Waters* v. *Union Trust Co.*, 129 Mich. 640; *Irwin* v. *Lombard*, 56 Oh. St. 9, and other cases.

While it is true that in those cases the courts held that the subscription or promise to contribute to religious or charitable institutions were valid and enforceable, we do not consider them authority for holding that the instant transactions were based on enforceable contracts or promises, or that the delivery of the checks constituted such enforceable contracts or promises. In each of the cases cited the court found that there was a consideration for the promise, consisting of the subscriptions of other persons, or that the promissee in reliance upon the promise had acted to its detriment. No such situation exists in this case and the transactions involving the checks in question can not be considered as more than attempts on the part of John F. Dodge to make gifts; and they were not completed until the checks were paid, accepted or certified by the banks. In the case of *Provident Institution* v. *Sisters of the Poor*, *supra*, which is directly in point here, the court said:

Under the facts as we are now assuming them to be, there can be no question about the donative purpose of Mrs. Bowdoin in giving to this hospital her check for $3,000. * * * It is well settled that a gift can not be effected by the delivery of a check upon an ordinary bank of deposit where the drawer's account is good for the amount. The reason is that until the check is cashed the drawer may stop payment. In such a case the donative purpose may be absolute when the check is given, and ten minutes, or ten hours, or ten days later, at any time before the check has been cashed, such donative purpose may be wholly changed and abrogated. The fundamental principle of the law of gifts is that the gift, to be effective, must place the thing donated beyond the control of the donor. * * *

* * * Until a legal gift has been effected so as to vest property in the donee, the only party who has any right calling for consideration in the transaction is the donor, and that right is a part of the great and sacred right which the law insures to every one under certain limitations and conditions to dispose of his own property in accordance with his own wish and will.

We are of the opinion that the gifts or contributions to the Salvation Army, the Detroit Patriotic Fund, and the Presbyterian Church, involved herein, were not completed until the year 1920 and that therefore the amounts thereof are not deductible from income for 1919.

The statutes of Michigan provide that a check of itself does not operate as an assignment of any part of the funds to the credit of

the drawer in the bank, and that the bank is not liable to the holder until it accepts or certifies the check. As to the rights of a payee of a check in States where this rule is in effect, it is stated in 5 Ruling Case Law, at page 489:

\* \* \* That the drawing and delivery of a check do not operate as an assignment, in any sense, of the drawer's rights as against the drawee, unless the check is in some way accepted by the drawee, and hence that as between the drawer and the payee or holder, the check does not operate as an assignment of so much of the fund as is drawn upon, or of the drawer's rights as against the drawee. In other words, checks drawn in the ordinary form, not describing any particular fund, or using any words of transfer of the whole or any part of the account standing to the credit of the drawer, but containing only the request directed to the bank to pay to the order of a payee a certain sum of money, are not, in the absence of acceptance, an assignment of the funds of the drawer either at law or in equity. According to the view in case of nonpayment, the recourse of the holder is against the drawer and the indorser, if any. The drawer alone can bring suit to recover the funds against which the check was drawn, and ordinarily he only can maintain an action for failure to pay on presentment. He may revoke the check, and countermand its payment before acceptance, and if unaccepted, his death will operate as a revocation, and it seems that his insolvency has the same effect.

It is also the rule that the death of a drawer of a check, as a matter of law, countermands or revokes the authority of the drawee to pay the check unless it has been certified or accepted by the drawee. See *5 Ruling Case Law*, p. 529, and cases cited therein.

The two checks drawn by John F. Dodge to the order of the Salvation Army were not delivered, accepted, certified, or paid until subsequent to Dodge's death in 1920. As to that transaction we have no hesitancy in holding, without further discussion, that there was no gift or contribution in 1919 and the amount of the checks is not deductible in computing Dodge's income for that year.

Relative to the checks to the Presbyterian Church and the Detroit Patriotic Fund, we find that they were not presented to, accepted, or paid by the bank until 1920. They did not constitute an assignment of any part of the funds standing to the credit of Dodge in the bank and unless and until accepted or certified by the bank they could have been revoked or countermanded by Dodge, and in the event of his death before acceptance or payment would have been stopped by operation of law.

It is apparent, we think, that the gift was not completed, so long as it was within the power of the donor to revoke it by stopping payment on the check. In this case John F. Dodge gave checks or orders to a third party but he did not actually part with his property until the checks were paid.

The circumstances surrounding the contribution or gift made by John F. Dodge to the Detroit Woman's Federation Club are essen-

tially different from those that obtained relative to the checks which we have just discussed. A gift or contribution of land is completed by delivery of a deed therefor to the grantee, either actually or constructively. And the delivery, under certain circumstances, may be effective to pass title if made to a third party for the use of the grantee. In Thompson on Real Property, vol. 4, pages 958 and 959, it is stated:

* * * It is not essential that the delivery be to the grantee himself. It may be made to the grantee's agent, and even to a third person who is not his agent, for the grantee's use, provided the grantee afterward assents to the deed or receives it. A deed may be delivered to a third person as to the agent or bailee of the grantee, though the latter has not at the time constituted him such. * * * If a deed be delivered absolutely, and beyond the grantor's control and right of dominion, for the grantee's use, to a person not at the time authorized by him to receive it, and the grantee afterwards accepts it, or authorizes the custodian to accept it, the deed is effectual from the time it was placed in the hands of such person.

The issue relative to this contribution or gift was raised affirmatively by the respondent in his amended answer and the burden is upon him to establish by at least a preponderance of the evidence that the gift or contribution was not completed in 1919. The evidence clearly establishes that Dodge desired to make the gift in 1919 and was advised that it would have to be fully consummated and completed in 1919 to make the amount thereof deductible from income in that year. He executed the deed and delivered it to Bloomer in 1919, with instructions to put it on record and give it to the Club, which was later done. There was a delivery of the deed in 1919 to a third person for the benefit of the grantee, and it was subsequently delivered by such third person to the grantee and was accepted. As above stated, a valid delivery may be made in that manner so as to pass title if the grantor at the time of the delivery to the third person parts with all control and right of dominion over the property, and especially if the third person is authorized by the grantee to accept the deed. The burden of proof as to this issue being on the respondent, it rests with him to show other facts to establish that the delivery to Bloomer was ineffective to pass title to the grantee. He has failed to meet that burden, and we accordingly resolve the issue in favor of the petitioners and decline to disturb the deduction from gross income for 1919 heretofore allowed on account of this contribution or gift in so far as it does not exceed $47,597.96.

The last question is whether John F. Dodge realized any income from the sale of the Berger option. We are of opinion that he did not. The facts are simply these: Berger had an option on the stock of the two Dodges effective until July 1, 1919. Webb, who desired to acquire the stock of the Dodges offered to buy the Berger option in order to obviate it as a bar to his own negotiations. The Dodges,

hearing of this fact, threatened to refuse to deal with Webb until subsequent to July 1, 1919, unless Berger would agree to divide with Bloomer and McMeans whatever he received from the sale of the option. By refusing to deal with Webb, the Dodges had it in their power to render the Berger option worthless to Webb so that he would not purchase it. Berger agreed to do as the Dodges directed and upon the sale of the option to Webb for $675,000 he paid, or caused to be paid to Bloomer and McMeans $225,000 each. But we are unable to perceive that the Dodges realized anything from the transaction. They had it in their power to force, and did force Berger to divide with Bloomer and McMeans the proceeds of the sale of the option, but they made nothing for themselves. The Dodges contracted to sell, and did sell their stock for $25,000,000. They received that amount and nothing more. We therefore hold that the respondent was in error in adding to the income of John F. Dodge any amount as profit from the sale of the Berger option.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, MORRIS, ARUNDELL, and MILLIKEN did not participate in the consideration or decision of this proceeding.