**BRIDEWELL v. CLAY et al.**

No. 13574.

Court of Civil Appeals of Texas. Dallas.

Nov. 3, 1944.

Rehearing Denied. Dec. 22, 1944.

J. Lee Zumwalt, of Dallas, for appellant.

Eugene DeBogory and Carter & Gallagher, all of Dallas, for appellees.

LOONEY, Justice.

The evidence and proceedings leading to this appeal, in short, are these: On November 8, 1943, Henry M. Clay died testate, leaving as his only legatees and heirs at law, a son and two married daughters—the appellees herein; his will was probated simply as a muniment of title, as administration was not necessary. The estate consisted chiefly of real estate located in the City of Dallas, and a checking account amounting to between three and four thousand dollars to his credit in the Grand Avenue State Bank of Dallas. All of his interests, except two pieces of real property and the checking account, were disposed of by the will; the property not disposed of presumably was acquired after execution of the will on December 3, 1937. It is obvious, therefore, that title to the money to the credit of deceased in the bank was vested in his heirs at his death, under the statute of descent and distribution, unless title to $1,000 thereof had previously vested in the appellant by reason of the facts and circumstances mentioned herein. The appellant, Miss Bridewell, was a resident of the City of Dallas, lived with her aged mother, was employed by the Federal Reserve Bank of Dallas as clerk, and had been an employee of that institution for twenty-five years. The record discloses that for more than fifteen years prior to his death, Mr. Clay had been divorced from his wife, and for at least fifteen years of that time had been a constant attendant upon the appellant, visited her weekly, often took her riding in his car, would take her home from work when the weather was inclement, remembered her birthdays and the Christmas season with nice gifts, also made gifts to her aunt and aged mother. All this spoke but one language, that of a delicate and affectionate regard for the appellant, obviously with the aim of ultimate marriage. Miss Bridewell, testifying, stated that deceased had never directly proposed marriage, but had mentioned it indirectly; when she would change the subject, because not ready for marriage as long as her mother lived, but evidently reciprocated his friendship and felt free to ask him for courtesies. This substantially describes the relationship of deceased and the appellant when on November 7, 1943, he was stricken while in his car out collect-

ing rents, was taken to his room, thereupon telephoned appellant of his attack, requested her to call Dr. Rushing, his physician, who sent an ambulance and took deceased to the Gaston Hospital in the City of Dallas; deceased also requested appellant to call a Mrs. Jacobs, another friend, one of his tenants. Appellant visited deceased in his room at the hospital about the noon hour, and within a few minutes he requested her to count the amount of money in his purse, which she did, and made a memorandum of it; he also requested her to tear from his checkbook a check written by him on that day, November 7, payable to appellant for $1,000, drawn on the Grand Avenue State Bank of Dallas, saying: "Tear this out and I want you to cash it." Prior to that time appellant knew nothing of the existence of the check, gave no consideration for it, regarded it as a gift, was so surprised that she simply said: "Thank you"; that ended this particular episode. The appellant, Mrs. Jacobs, and Mrs. Flora Lockett, one of deceased's daughters, were with him until 8 or 9 o'clock p. m., Mrs. Lockett remaining until about 10. Deceased died about 3:30 a. m. of the 8th, before the check was ever presented or cashed. About noon of November 8th appellant deposited the check for collection in the Republic National Bank, where she did business, informing the bank's representative of the death of Mr. Clay. The check took the usual course of banking, in a few days was paid by the drawee bank, and the fund deposited to the credit of appellant in the Republic National Bank. The evidence, in our opinion, conclusively shows that Mr. Clay was in possession of his mental faculties, knew precisely what he was doing, and that no pressure or undue influence was brought to bear upon him to cause the writing of the check and its delivery to the appellant. The above brings us to the beginning of the litigation that ensued.

On November 18, 1943, appellees filed this suit against the appellant, alleged the material facts as herein outlined, claimed ownership of the fund, i. e., the proceeds of the check collected after the death of their father, both as sole legatees under his will and as sole heirs at law under the statute of descent and distribution, prayed for judgment against the appellant, also sued out a writ of garnishment against the Republic National Bank, thus impounding the fund. The record fails to disclose that the bank ever formally answered the writ of garnishment, or that any judgment was entered in regard to the garnishment proceedings, except an order of court overruling appellant's motion to quash. Appellees seem to have abandoned the garnishment proceedings; however, the record discloses that on March 1, 1944, they filed their first amended original petition making the Republic National Bank a party defendant, claimed the fund as heirs of their father, sought judgment against appellant and the bank, jointly and severally, for the sum of $1,000, interest, costs, etc. The suit was answered by the appellant; also the bank answered, claimed to be an impartial stakeholder, i. e., made no claim to the fund involved, but prayed that, if appellees should recover judgment against both defendants, the fund held by it to the credit of the appellant be applied to the satisfaction of the judgment and for general relief.

A jury having been waived, the court, after hearing evidence, rendered judgment for the appellees against both defendants, jointly and severally, with judgment over in favor of the bank against the appellant; she alone appealed and is urging a number of points of error that challenge the correctness of the judgment below. However, we are of opinion that only one question is presented for decision, i. e., in view of the fact that the check, given appellant by Mr. Clay, was neither presented to, nor accepted, certified or paid by the bank upon which it was drawn until after the death of Mr. Clay, did it operate as an assignment to appellant of any part of the funds to the credit of Mr. Clay in the drawee bank, and, under these circumstances, was the intended gift of $1,000 to the appellant by Mr. Clay a consummated and completed transaction prior to his death? For reasons which we will now state, we do not think so.

■■ Section 189 (article 5947, R.C.S.) of the Uniform Negotiable Instruments Act of this state reads as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." The record reveals no fact or circumstance that could be given the effect of taking the instant case from under the operation of the statute just quoted, or that would constitute a constructive or symbolic assignment of the funds sought to be drawn out of the bank. This

being true, we think it follows inescapably that the intended gift never became effective; the check, being merely a gratuitous promise, was revoked ipso facto by the death of the promisor. "A gift inter vivos is a gift between the living; it operates, if at all, in the donor's lifetime, immediately and irrevocably." It is also said that a gift is "a contract which takes place by the mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee gratuitously, and the donee, who accepts and acquires the legal title to it; it operates, if at all, in the donor's lifetime, immediately and irrevocably, and is a gift executed, no further act of parties, no contingency of death or otherwise, being needed to give it effect." 38 C.J.S., Gifts, p. 781, § 3. Quoting from 28 C.J. p. 629, § 20, the Eastland Court of Civil Appeals, in Benavides v. Laredo National Bank, 91 S.W.2d 372–374, stated the law of gifts to the same effect. See, also, 38 C.J.S., Gifts, § 16. It is also stated in 38 C.J.S., Gifts, p. 842, § 55, with citation of authorities, that "The gift of the donor's own check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee", and further that at any time prior thereto the .donor may revoke it by stopping payment; and is ipso facto revoked by the death of the donor. The case of Burrows v. Burrows, 134 N.E. 271, 272, by the Supreme Court of Massachusetts, presented for decision the identical question before us here. Passing upon whether or not death of the donor revoked the gift, the Supreme Court, referring to chapter 107, §§ 209–212, of the Uniform Negotiable Instruments Act of that state (precisely the same as in this state, heretofore quoted), used the following pertinent language: "The circumstance that the check was for a sum equal to or in excess of the whole amount of the deposit due the intestate, instead of for a part of it, does not render the provision of section 212 inapplicable. As the check of itself did not operate as an assignment of any part of the funds, it did not so operate as to the whole of them; in other words, section 212 applies to the whole fund on deposit as well as to part of it. The general rule is well established, in this and many other jurisdictions, that the mere delivery of a donor's personal check or promissory note of itself does not constitute a valid gift, as it is revocable at any time before its presenta-

tion for payment, and is revoked by the death of the donor. (Citing cases.)"

The doctrine is also stated in an annotation in 20 A.L.R. beginning at page 177 that "The rule in most jurisdictions appears to be settled that the donor's check, prior to its acceptance or payment by the bank, is not the .subject of a valid gift, either inter vivos or causa mortis." And further that "It has been held immaterial whether the intended gift of the donor's check was a gift inter vivos or causa mortis, so far as regards the validity of the gift if the check is not accepted or paid prior to the drawer's death, the gift being invalid in either case because lacking a complete delivery. Pennell v. Ennis, 126 Mo.App. 355, 103 S.W. 147; Pullen v. Placer County Bank, 138 Cal. 169, 66 P. 740, 71 P. 83, 94 Am.St.Rep. 19."

In view of the undisputed facts and the authorities, we are of opinion and so hold that the check involved in the present controversy, not having been presented to the drawee bank and either accepted or paid, until after Mr. Clay's death, was ineffectual as a gift and revoked ipso facto by his death. We have carefully examined the cases cited and relied upon by appellant, but fail to find that either is in point.

Appellant also urges several points of error complaining of the action of the court in overruling her motion to quash the garnishment proceedings against the Republic National Bank. As heretofore stated, the bank did not answer the writ of garnishment; no judgment was entered for or against it as garnishee; appellees seem to have abandoned the garnishment proceedings and, in lieu, made the Republic National Bank a codefendant with the appellant, and sought and obtained a judgment against it as such; therefore if error was committed by the court in overruling appellant's motion to quash the garnishment proceedings, the same was entirely harmless; therefore these points of error, as well as all others urged by appellant, are overruled.

In harmony with the views herein expressed, the judgment of the court below is affirmed; but, in view of the abandonment of the garnishment proceedings by the appellees, all costs incident thereto will be taxed against them.

Affirmed.