ESTATE OF MODIE J. SPIEGEL, DECEASED, LENA S. SPIEGEL AND MODIE J. SPIEGEL, JR., CO-EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14658. Promulgated March 31, 1949.

*Frederick R. Shearer, Esq.*, and *Harry Thom, Esq.*, for the petitioners.
*R. L. Greene, Esq.*, for the respondent.

**OPINION.**

OPPER, *Judge*: The first question, and the only one on the merits, is whether respondent erred in disallowing as charitable deductions for 1942 two contributions, one of $5,000, and another of $2,800, made by decedent by checks dated December 30, 1942, and delivered on December 31, 1942, but not cashed until in January 1943. The $5,000 check was cashed on January 11, after decedent's death on January 8, and the $2,800 check on January 4, 1943. It being conceded that the payee organizations were within the permitted class described in section 23 (o) (2), the issue is whether the contributions were, under the circumstances, paid in 1942. In the disposition of this controversy, certain principles must be taken as generally accepted.

From the time of the adoption of the Uniform Negotiable Instruments Law, the concept of a check as an equitable assignment of a portion of the drawer's account fell into the discard. But both commercial usage and legal authority thereafter considered a payment by check as at least "conditional payment." [1] See *Swope* v. *McClure*, 239 Ill. App. 578. It was necessarily placed in a different category from a mere promise to pay; or even from such a promise reduced to formal

---

[1] "Of course, ordinarily a check is not considered payment unless it is accepted as such with the intention that the delivery of the check operate as a release of the original obligation. * * *

"But whether or not it be considered that the checks were given and accepted as payment and extinguishment of the original duty of the defendants * * * it must be remembered that such checks are at least a conditional payment * * *." (*Beers* v. *Federal Security Administrator* (Dist. Ct. Conn.), 80 Fed. Supp. 183.)

terms and issued in the form of a negotiable promissory note. Cf. *Eckert* v. *Burnet*, 283 U. S. 140, with *Estate of M. A. Bradley*, 19 B. T. A. 49.

The condition imported in the transfer of funds by means of the delivery of a check is that the check must be paid upon presentation. But the problem remains whether that condition be thought of as precedent or subsequent, or, to adopt practical and ordinary terms, whether the check when paid should be considered as having constituted payment at the time it was delivered or at the time it was honored. That seems to us the test which will dispose of the pending question. We may assume that decedent's delivery of checks to the charities in question was at the time no more than a conditional payment of the charitable contribution for which the deduction is here sought. If the subsequent honoring of the checks by fulfilling the condition subsequent related the payment back to the date of delivery, the fact of the contribution and the time it was paid would become fixed.

Upon that point, an examination of the authorities renders it impossible to entertain the slightest doubt.

Payment by bill or check becomes absolute payment of the debt when the check is paid on presentation. On such payment of the check, *the debt is deemed to have been discharged from the time the check was given.* Thus, it has been held that a contract which is invalid because made on Sunday is not relieved of its invalidity by reason of the fact that a check given on that day was paid on a secular day. And if under the circumstances of a particular case it is necessary to make a payment at a particular time, as for example to satisfy the part payment provision of the statute of frauds, a check given and received at that time, but not cashed until after the specified time, will operate as a payment as of the date when given. [Emphasis added.] [40 Am. Juris. 775.]

In *Estate of M. A. Bradley, supra,* p. 51, the Board of Tax Appeals said:

At the least, the payment * * * was a conditional one. * * * The check was duly paid. Under well established law *the payment of the check * * * related back to the date of its delivery* and the debt is deemed to be discharged from that date. 21 R. C. L. 70; *Hooker* v. *Burr*, 137 Cal. 663; *McFadden* v. *Follrath* (Minn.), 130 N. W. 542. [Emphasis added.]

On review (*Commissioner* v. *Bradley* (C. C. A., 6th Cir.), 56 Fed. (2d) 728, 729), the opinion notes:

* * * When, therefore, the check was paid promptly on such presentation, the condition to which this payment was subject was performed, and what had been, at the time of the acceptance of the check, a conditional payment by the deceased, became an absolute payment by him *as of that time.* [Emphasis added.]

In *Mark D. Eagleton*, 35 B. T. A. 551, 558; affd. (C. C. A., 8th Cir.), 97 Fed. (2d) 62, the rule is stated to be:

Payment by check is a conditional payment subject to the condition subsequent that the check is paid on presentation thereof to the drawee. When this method

of payment is carried through to the performance of the condition subsequent, it is reasonable to conclude that the payment dates back to the time of giving the check, and it has been held accordingly.  *   *   *

As recently as *Estate of James W. Hubbell*, 10 T. C. 1207, this language from the *Eagleton* case was quoted with approval.

Similarly, in *Thomas* v. *Prudential Insurance Co. of America* (C. C. A., 4th Cir.), 104 Fed. (2d) 480, the court stated:

*   *   *   In *Kendrick* v. *Insurance Co.*, 124 N. C. 315, 32 S. E. 728, 70 Am. St. Rep. 592, it was held that a check mailed a few hours before the insured died constituted payment of premium during his lifetime.   See, also, *Whitley* v. *Insurance Co.*, 71 N. C. 480; *Taylor* v. *Merchants' Fire Ins. Co.*, 9 How. 390, 13 L. Ed. 187.

And, in *Potter* v. *Sager*, 184 App. Div. 327; 171 N. Y. S. 438; affd., 228 N. Y. 526; 126 N. E. 920:

*   *   *   Following this general current of authority, we conclude that the check drawn to the order of plaintiff's salesman, and honored in due course, constituted a payment of cash to plaintiff *as of the time of the delivery* of the automobile to defendants  *   *   *.   [Emphasis added.]

To quote from *Sardeson* v. *Menage*, 41 Minn. 314; 43 N. W. 66:

*   *   *   Of course payment by check, unless otherwise expressly agreed, is always upon the implied condition that it be honored and paid on presentation. If duly presented and not honored, it will turn out to have been no payment *   *   *.   But, on the other hand, if it be duly paid, as contemplated, the payment *   *   * is usually deemed to relate back to the time of its delivery  *   *   *.

See also *Cole* v. *Cole* (Utah), 122 Pac. (2d) 201.

In Pennsylvania the rule is stated in somewhat different fashion, but to a similar effect: [2] "A check is not an absolute but a conditional payment defeasible on the nonpayment of the check." (*Wedmore* v. *McInnes*, 69 Pa. Super. 220, 222.)

And in California:

*   *   *   In general mercantile and commercial transactions a check, after all, is but a convenient form of transferring money, and operates either as payment absolute or payment conditional, as the parties themselves intend.  *   *   *  But in all such transactions, where a check is received as conditional payment, the payment becomes absolute, and relates to the date of the delivery of the check, when its recipient actually cashes it.   [*Hooker* v. *Burr*, 137 Cal. 663; 70 Pac. 778.]

This case was cited as authority in *Texas Mutual Life Insurance Association* v. *Tolbert* (Tex. Sup. Ct.), 136 S. W. (2d) 584, for the conclusion that:

*   *   *   The correct calculation should be, we think, computed from the date of notice of the assessment to the time of the delivery of the check to the associa-

---

[2] Note a comparable statement of the Canadian rule:

"The mere receipt of a cheque is not per se payment of the amount represented by the check  *   *   *  but it operates as payment until it has been presented and payment refused." (*Hughes* v. *Canada Permanent Loan Soc.*, 39 U. C. Q. B. (Ont.) 221, 229.)

tion, for in such "transactions, where a check is received as conditional payment, the payment becomes absolute, and relates back to the date of the delivery of the check, when its recipient actually cashes it. * * *"

And in Illinois, the situs of the instant transactions, *Hooker* v. *Burr*, *supra*, has also been cited with approval. *Swope* v. *McClure, supra*.

It would seem to us unfortunate for the Tax Court to fail to recognize what has so frequently been suggested, that as a practical matter, in everyday personal and commercial usage, the transfer of funds by check is an accepted procedure. The parties almost without exception think and deal in terms of payment except in the unusual circumstance, not involved here, that the check is dishonored upon presentation, or that it was delivered in the first place subject to some condition or infirmity which intervenes between delivery and presentation.

Furthermore, as a matter of common parlance we think it is most common to speak of "paying" an obligation by giving one's check for it. That is the common method of paying bills in this country. * * * [*Anthony P. Miller, Inc.* v. *Commissioner* (C. C. A., 3d Cir.), 164 Fed. (2d) 268, 269, modifying 7 T. C. 729; certiorari denied, 333 U. S. 861.]

It would seem, however, that this court should take judicial notice of the fact that checks and drafts are usual and ordinary means of transacting business and transferring money in all business transactions. * * * [*Potter* v. *Sager, supra.*]

"A check, after all, is but a convenient form of transferring money." *Hooker* v. *Burr, supra.*

* * * It would subject the public to vast inconvenience, and to increased risk even, if it be held that all the transactions with public officers in the payment of taxes, redemptions, etc., must be through the medium of bank bills and coin, instead of being done, as they are largely, through the banks, by means of certificates and demand checks. * * * [*Sardeson* v. *Menage, supra.*]

With knowledge of the prevalence of this practice, and of the necessity of treating tax questions from a practical rather than a theoretical viewpoint, it would be astonishing indeed if by the use of the word "payment," [3] in section 23 (o), Congress did not intend to include a check given absolutely and in due course subsequently presented and paid. See *Beers* v. *Federal Security Administrator* (Dist. Ct. Conn.), 80 Fed. Supp. 183. We conclude that decedent, upon the issuance and delivery of the checks in question, made a conditional payment of charitable contributions which, upon the presentation and payment of the checks, became absolute and related back to the time when the checks were delivered.

---

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

  *      *      *      *      *      *      *

(o) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of :

  *      *      *      *      *      *      *

One case stands as an obstruction in this almost universal course of the smooth flow of practical and legal treatment. That is *Estate of John F. Dodge*, 13 B. T. A. 201. There, checks drawn and issued on December 31 by a taxpayer who subsequently died were denied deduction as charitable contributions by the decedent for that year. Upon the issuance of the checks a "liability for payment" was assumed in the opinion. But on the supposed hypothesis that to a cash-basis taxpayer the existence of such a liability would not warrant a deduction, the Board of Tax Appeals said (p. 219) that "a contribution is not *made* even though liability for payment has attached, until it is completed by payment either in money or money's worth." Cf. *C. H. Musselman*, 1 B. T. A. 41.

Notwithstanding that statement, the *Dodge* case was distinguished in *Estate of M. A. Bradley, supra,* on the theory of "lack of consideration" for a gift or contribution, and the consequent absence of liability, in order to arrive at the decision in that case that a check given by a decedent in payment of taxes but not cashed until after his death was nevertheless deductible as a payment by him. The theory of *Estate of M. A. Bradley* is hence so inconsistent with that stated in *Estate of John F. Dodge* that we must view it as tantamount to a reversal of that case. And it is not an irrelevant circumstance that a search has failed to reveal that the *Dodge* case has ever been followed since that time.

The discussion of the necessity for "consideration" [4] contained in the *Dodge* case appears on analysis to be the pursuit of an irrelevant factor, for example, the statement that:

\* \* \* the transactions involving the checks in question can not be considered as more than attempts on the part of John F. Dodge to make gifts; and they were not completed until the checks were paid, accepted, or certified by the banks. \* \* \* [p. 220.]

It seems evident that the same contention could have been made with respect to the payment of the taxes in the *Bradley* case, and that they were no more than "attempts" to pay the taxes, since until the checks were honored, they were not payment either. For a cash-basis taxpayer the mere delivery of a check can not constitute payment in cash, even of an admitted liability, except on the theory of relation-back. What must be viewed as the critical point is that in all of the cases we have considered the checks were promptly presented and were duly paid upon presentation, and that, according to the principles generally accepted and previously discussed, the payment which upon delivery

---

[4] It is not improbable that the preoccupation with the matter of consideration is a residual concept lacking real validity since the adoption of the Uniform Negotiable Instruments Law. The "equitable assignment" theory extensively accepted up to that time applied only to checks issued for value, and was subject to a recognized exception in the case of a mere gift. *Martin* v. *Martin,* 89 Ill. App. 147. On that approach the presence or lack of consideration was a determining factor.

of the check was conditional not only became absolute upon presentation, but related back to the time of the original delivery. And that is a concept that has nothing to do with consideration or the lack of it.

As we have already noted, the language of the applicable section now [5] calls for "payment" of charitable contributions in order for them to be deductible. The purpose of this approach was to place cash and accrual taxpayers upon an equal footing with respect to charitable contributions.[6] Instead of a contribution being deductible when "made," as was required when the *Dodge* case was decided, it is now determined by "payment," which, as we have seen, is, upon the ultimate honoring of the check, assumed to be as of the date of its delivery.

Charitable contributions may be gifts in the broad sense, but for tax purposes they fall into a special class and there is special legislation dealing with them. What we say here is intended to apply to charitable contributions and not necessarily to all categories of gifts. Particularly the concept that a gift can not have consideration and can not be of a binding nature must be modified in construing section 23 (o). The committee report, quoted in footnote 6, *supra*, by referring to accrual systems of accounting and to the accrual of charitable pledges, demonstrates that there may be enforcible obligations growing out of a contribution to charity and that Congress so recognized, as without enforcibility there could never be an accrual. *United States* v. *Anderson*, 269 U. S. 422; *Dixie-Pine Products Co.* v. *Commissioner*, 320 U. S. 516.

The legislation in its present form, revolving as it does around "payment," was designed to and did eliminate the possibility of a distinction between cash- and accrual-basis taxpayers in the field of charitable contributions. But we are asked to hold here that the time

---

[5] Revenue Act of 1938, sec. 23 (o).

[6] "SECTIONS 23 (o) and 23 (q). DEDUCTION FOR CHARITABLE AND OTHER CONTRIBUTIONS.

"These subsections provide the basic rule for the allowance of deductions of contributions or gifts for charitable or other purposes in the case of individuals (sec. 23 (o)) and all corporations (sec. 23 (q)).

"Under the various revenue acts the deduction for contributions is allowed for the taxable year in which the contribution is made. Hence, a taxpayer on an accrual basis of accounting may claim that he is entitled to a deduction for the amount of a charitable pledge in one year, although he does not actually pay it until a later year, or indefinitely postpones payment. The doubt and confusion in such cases is aggravated by reason of the uncertainty and diversity in the law of the various States on the question as to when the liability of a subscriber to a charitable fund is fully incurred. In the interest of certainty in the administration of the revenue laws, it is desirable to dispel this confusion by enacting a clear and uniform statutory rule to govern this situation.

"The bill provides that the deduction for contributions or gifts for charitable and other purposes shall be allowed only for the taxable year in which the contribution is actually paid regardless of whether the taxpayer is reporting income on the cash or the accrual basis. The allowance of the deduction in the year when actually paid will provide a clearer rule without hardship to the taxpayer and will eliminate the uncertainty in the administration of the deduction. Of course the payment of the contribution or gift cannot result in a double deduction." (Rept. No. 1860, Ways and Means Committee, 75th Cong., 3d sess., p. 19.)

of payment by check depends upon whether or not the check was itself a binding obligation because supported by a consideration. Cf. *Estate of M. A. Bradley, supra.* If we did so, there would arise in each case where the charitable payment is founded on a pledge asserted to be enforceable—a claim made by the petitioner in this very proceeding with respect to the check honored after decedent's death—an additional uncertainty of the exact nature which the statute was intended to eliminate. The same investigation of obscure and equivocal facts, the same application and possibly unequal operation of local law would be required as formerly existed in determining accruability. We can not construe the sense in which Congress used the term "payment" as creating anew the very ambiguities which it was attempting by the use of that term to eliminate. This may in itself be sufficient to distinguish *Estate of John F. Dodge, supra.* If not, we regard that decision as erroneous. In any event, it will no longer be followed.

The remaining question concerns the death of decedent prior to the cashing of one of the checks for which deduction is claimed. It is suggested that death revoked the authority of the bank to cash the check, whatever might be the situation where the drawer remains alive, and that the contribution can not hence be treated as paid. In this respect, however, the contention appears to be in error. In *Commissioner* v. *Bradley, supra,* the drawer taxpayer had also died prior to presentation. The court said (p. 729):

> The fact that the death of the drawer of the check before its presentation revoked the authority of the drawee to pay it did not affect the validity or effect of such check as between the drawer and the payee, at least after its payment by the drawee * * *.

Nor in the absence of knowledge on the part of the drawee would there be a duty upon it to withhold payment of the check or any liability consequent upon its payment.

> * * * It is well settled that payment by a bank of a check of a depositor after his death, made by it in good faith without knowledge of the death or of facts sufficient to cause an inquiry, is a valid payment. * * * [*Lourie* v. *Chase National Bank,* 42 N. Y. S. (2d) 205.]

> * * * A bank is not liable to the drawer's estate for paying his check without knowledge or notice of his death. [9 C. J. S. § 353, p. 704.]

And the fact that under such circumstances the check was issued without consideration would not call for a different conclusion.

> * * * Very many * * * must have been the cases where * * * the check *was given without value,* and the bank has paid it after death, in ignorance of that fact. Yet, in my research, I have not been able to find in the reports in this country or in England a case where it was sought, under such circumstances, to hold the bank liable, except the *Rogerson* Case, 1 Bing. 93; 7 J. B. Moore, 412; 1 L. J. C. P. 6, in which the attempt failed. [*Glennau* v. *Rochester Trust & S. D. Co.,* 209 N. Y. 12, 102 N. E. 537.] [Emphasis added.]

Dealing, as we are here, with contributions made by checks delivered and accepted unconditionally, which were presented and paid in due course; which, as we have seen, upon such payment are viewed as having been paid at the time of the original delivery of the check; and recognizing that a different rule and a different factual situation would, of course, exist had the checks been withdrawn, *Mark D. Eagleton, supra*, or refused payment upon presentation, *Estate of James W. Hubbell, supra;* we conclude that here the contributions were made by the decedent in his lifetime in the year in issue, and that they are hence deductible in full as claimed by petitioners.

The foregoing disposition of the substantive question renders unnecessary consideration of petitioners' further contention that the deficiency is barred by the statute of limitations.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

———

DISNEY, *J.*, dissenting: The problem here is as to when a gift to charity is effective and therefore deductible under section 23 (o) of the Internal Revenue Code. Two checks are involved, neither of which was paid within the taxable year, and one of which was not paid until after the death of the maker. A reasonable regard for consistency seems to require that the conclusion here should not be different in principle from those many cases which have laid down the essential doctrine that the test of a taxable gift is abandonment of economic control over property, and that there is no gift if power remains in the donor to revoke or recapture the property. *Burnet* v. *Guggenheim*, 288 U. S. 280; *Sanford's Estate* v. *Commissioner*, 308 U. S. 39; *Smith* v. *Shaughnessy*, 318 U. S. 176. The principle is recognized in *Robinette* v. *Helvering*, 318 U. S. 184, is not essentially different than that laid down in *Corliss* v. *Bowers*, 281 U. S. 376, and has often been applied by us, e. g., *Estate of Ethel K. Childers*, 10 T. C. 566, 579; *Estate of Ralph Owen Howard*, 9 T. C. 1192, 1199; *Estate of Louis J. Kolb*, 5 T. C. 588, 594. The control regarded as so important throughout the above cases was in nowise lost by the maker of the check here, for under law so settled as to require no citation, he could, until payment, revoke the check, and the one check was revoked by his death. In the light of the above authority, could it be denied that a check paid only after the maker's death did not effect a gift *inter vivos* so as to diminish his gross estate? Yet the point here is not in essence different: Was the gift consummated, before death as to the one check, before the end of the year as to both?

The majority, in announcing (for the first time, in the body of the law so far as I have been able to find) the idea that a gift by check is

effective at the date thereof, if the check is later paid, even after death, appears to find some deviation from the principles of the older cases above cited, in the fact that since 1938 section 23 (o) provides for deduction of gifts or donations "payment of which is made within the taxable year"; in short, shift the complete emphasis to "payment" to the disregard of the previously settled concept of completed gift. But there was no such intent in the change effectuated by the Revenue Act of 1938. The object was merely to put cash and accrual taxpayers on the same footing. Committee Report, House of Representatives, 1939, C. B., Pt. 2, pp. 741–742, quoted in the majority opinion, shows clearly what Congress had in mind. It is to be noted that the committee report twice says "actually paid" and that only in the year thereof is deduction to be allowed. In the face of that language the majority opinion says that the later honoring of a check, even after death, "related the payment back to the date of delivery." The statute does not say so; and the Congress did not so intend. It required *actual* payment in the year of deduction.

To sustain its conclusion the majority leaves the field of the law of gift, and relies wholly on the general thought that a check is conditional payment, effective from date in case it is honored. Not a single case is cited involving a gift; all merely involve payments by check. In short, the incidence of the prime principles of the law of gift is ignored, and only in this majority opinion is there put forth the concept that later payment of a check, and its discharge of its obligation when made, affects the law of gift. In addition, to arrive at the conclusion, the majority overrule *Estate of John F. Dodge*, 13 B. T. A. 201, holding squarely that gifts drawn and (as to some) delivered in 1919, but paid in 1920, some of them after the drawer's death, did not constitute gifts deductible in 1919. To overcome the effect of that case, which was cited in *John D. Archbold*, 42 B. T. A. 453, in holding that a promise to make a gift is not a present gift, the majority points out that the *Dodge* case was distinguished in *Estate of M. A. Bradley*, 19 B. T. A. 49. That is true, and in doing so we removed any ground for the reliance, which the majority here put, on the *Bradley* case on the question here presented, for we said:

In *Estate of John F. Dodge*, 13 B. T. A. 201, we held that the payment by the bank of a check representing a gift was necessary in order to complete the gift. That decision was based primarily on the lack of consideration for the gift. The status of a gift, however, is quite different from that of the payment of the legal obligation involved in this case. Hence, our decision in the *Dodge* case is not in conflict with the views above expressed.

The distinction was sound, for the *Bradley* case had nothing to do with gift, but was one where we emphasized repeatedly the acceptance at time of delivery of a check as payment of taxes, the custom of the

county treasurer as to acceptance of checks, his knowledge that the check was intended as immediate payment because of the payor's health, and the delay of the treasurer in presenting the check—all elements under hornbook principles to establish effect for the check when given, but having no relation at all to the problem of effective date of gift. Yet, the *Bradley* case, so carefully distinguishing the *Dodge* case as involving gift, not in the *Bradley* case, is now made the basis of overruling the *Dodge* case. This is truly remarkable.

When we turn to the subject of gift, we find ample law that a check does not work a gift. *Burrows* v. *Burrows* (Mass.), 134 N. E. 271. In *City Bank Farmers Trust Co.* v. *Hoey*, 23 Fed. Supp. 831; affd., 101 Fed. (2d) 9, the court, in holding that a court decree directing payment of a gift from an incompetent's estate does not effect a gift, but may be revoked at any time prior to actual payment, says:

> * * * Not even the handing over of a check to the donee, * * * constitutes a gift; until the check has been paid or accepted by the bank there is no valid gift.

The court held, therefore, that the gift was made when the money was paid over by the incompetent's committee, after June 6, 1932, and not prior to the effective date of the gift tax law, though the court decree antedated that statute.

On this subject, I note 38 C. J. S. on Gifts, p. 842, as follows:

> As in the case of a note, the gift of the donor's own check is but the promise of a gift and does not amount to a completed gift until payment or acceptance by the drawee. * * * at any time prior thereto, the donor may revoke it by stopping payment, and it is ipso facto revoked by the death of the donor. The gift of a check becomes complete when, *in the donor's lifetime*, it is paid, certified, or accepted by the drawee * * *. [Italics supplied.]

The majority, however, says that the idea that death revokes a check is erroneous. I find the body of the law to the contrary. Even absent the element that the check is for a gift, 9 C. J. S. on Banks and Banking, p. 695, says:

> As a general rule the death of the drawer of a check before its certification, acceptance, or payment revokes the authority of the bank to pay it. Likewise, the authority to collect is revoked by the drawer's death; consequently, even though the circumstances are such that a bank has incurred no liability by paying a check after the drawer's death, the payee who has received the proceeds after the drawer's death must refund the amount to the drawer's estate. * * *

When we go to the law of gift, we find 38 C. J. S. 849 saying:

> The purported gift of a check drawn by the donor is in general revoked *ipso facto* by the death of the donor before payment, or before payment or acceptance of the check by the drawee, or, as sometimes stated, before presentation for payment, except, according to some cases, where the check is for the exact amount which remained in the donor's bank account.

On the same subject, 12 **R. C. L.** 945 reads:

The rule seems to be well established that the delivery of a check with the intention of making a gift of the amount thereof does not constitute a valid gift of such amount where the check has not been presented at the bank and paid or credited to the payee, and in the absence of such payment or acceptance the death of the drawer operates, as against the payee, as a revocation of the check. * * * After a check delivered with the intention of making a gift of the amount, has been presented and paid, the gift of the money is then complete.

In *Sneider* v. *Bank of Italy*, 194 Pac. 1021, a bank paid two checks after the death of the drawer, after notice of death. The administratrix of the drawer's estate recovered. Citing *Pullen* v. *Placer County Bank*, 71 Pac. 83, the court said:

* * * Consequently the vitality of a check, at least where it has not been accepted or certified prior to the knowledge of the death of the depositor, ceases upon receipt of such knowledge by the bank, and a bank which pays such a check after knowledge of the death of the depositor is liable to the estate of the depositor.

See also *In re Mellier's Estate*, 182 Atl. 388.

Among many other cases found on the subject of checks as gifts, the following are suggested: *Straut* v. *Hollinger*, 50 Atl. (2d) 478 (checks not presented for payment until after drawer's death, then protested by the executor, held not gifts: "Again the checks were not completed gifts. They were subject to the control and dominion of the maker during his life"); *Provident Institution for Savings* v. *Sisters of the Poor*, 100 Atl. 894 (gift not effected by check because the donor can stop payment; distinction made between check for value and donation); *Smythe* v. *Sanders*, 101 So. 435 (there is no delivery in case of gift of check "unless and until it is cashed in lifetime of donor," as attempted gift is one of money); *Bowman* v. *Sears*, 218 Pac. 489 (a completed gift not "consummated" by check without presentation before death).

In *Keller* v. *Davis*, 187 Atl. 267, the check was an ordinary check, but on a savings account. It was credited to drawee's account before death. The court said:

If it should appear on the settlement of the estate that the check was not given in payment of a debt or obligation due by Mrs. Keller [drawer] to Mrs. Davis but was a gift, the death of the drawer would render it uncollectible.

That these cases do not involve actual payment of checks after death seems to me immaterial. Can it be doubted that even if a bank did so pay a check, after death, the courts deciding the above cases would compel repayment, because of incompletion of gift before death? If so, I think we can not validate a gift, for purposes of deduction, where it is not consummated by payment either before death or before the end of the taxable year. Not only do I find no sound reason to overrule the *Dodge* case, but the whole theory and law of

completed gifts sustains it, and cases having no relation to gifts may not rightly be basis for taking a new view. Statutes on the same subject should be read together. This one involves primarily gift, but "payment" is involved. The majority gives no consideration to the element of gift.

Further, I point out, contrary to the view of the majority that the cashing of the checks related back to date of delivery, notwithstanding death, as to the one check, that, despite payment after death of a check given as a gift, it is no gift. In *Burrows* v. *Burrows, supra*, by the Supreme Court of Massachusetts, the gift check was cashed after death and suit was filed by the administrator to recover. Though the donor's pass book was also delivered by him to the donee, and though the state law gave the bank a period after death in which to cash such checks, the court held that because a check is revocable, no gift was effected. In *Pullen* v. *Placer County Bank, supra*, the gift check was paid after death. The court held that there was no gift. Though the donee had been requested not to cash the check until after death, the court specifically says that was of no effect. In *Bridewell* v. *Clay*, 185 S. W. (2d) 170, the gift check was cashed after death. Legatees and heirs sued to recover, and obtained judgment. In *Chrzanowska* v. *Corn Exchange Bank*, 159 N. Y. S. 385, the bank paid a check after drawer's death and was sued. Judgment was for the defendant. " * * * upon the death of the drawer before presentation the authority of the holder is revoked, and the bank is no longer authorized to pay; but on principles of necessity incident to the banking business, if the bank pays in good faith and without notice of the death of the drawer, it is protected." Thus we see that it is not true that a check given as a gift, if later cashed after death, relates back to the date of check or delivery, and the statement from *Glennau* v. *Rochester Trust & S. D. Co.*, 209 N. Y. 12, quoted in the majority opinion is shown not to apply to checks given as gifts. Even those cases, such as *Chrzanowska* v. *Corn Exchange Bank, supra*, where the bank paying after death is protected, recognize that there was revocation of the check by the death and the protection is on different principles. We are here interested not in whether a bank paying without notice of death would be protected, but whether a gift by check is to be considered paid when delivered, notwithstanding later death of the donor. The cases on the subject contradict completely the majority conclusion here. The bank's payment of a gift check does not "relate back," and even payment without notice protects only in some cases. If the doctrine of relation back applied, the defense of lack of notice of death would be superfluous. There is not, under the cases, the "payment" required by the statute, if death intervenes to revoke.

Nothing in the statute or its history indicates that there was intent to desert the usual requirement of completion of gift in order for it to be deducted in the taxable year. The intent only to equalize cash and accrual taxpayers is clear. These gifts were subject to complete revocation before the end of the taxable year. The $2,800 check, it will be noted, could not have been cashed within the year because it was not received until after banking hours on December 31. How, then, can it be said that the payee had the dominion required in case of a gift? Both checks were, of course, altogether revocable. The majority idea of relation back of the checks when paid is plainly a mere application of the constructive receipt thought, in an attempt to secure a deduction.

A deduction is a matter of grace; and the concept of constructive receipt is sparingly applied. Citation of cases is not necessary. Even if constructive receipt by the payee could be found, constructive payment does not follow. *Jenkins* v. *Bitgood*, 101 Fed. (2d) 17. In *Nina Cornelia Prime, Executrix*, 39 B. T. A. 487, we said:

\* \* \* The constructive payment theory has seldom been approved in claims of a taxpayer on a cash basis for a deduction which presupposes an expenditure by the taxpayer. \* \* \*

In *Cox Motor Sales Co.*, 42 B. T. A. 192, and citing *Black Motor Co.*, 41 B. T. A. 300, and *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85, we pointed out the asymmetry of the taxing statutes and said, in effect, that the constructive receipt should be thought to imply constructive payment:

\* \* \* We are not at liberty on that account to construe the section before us in a way that would obviously pervert the intent of Congress that *actual* payments should be made by the corporation to justify the deduction of the dividend claimed. [Italics supplied.]

So here, where Congress in its report twice specifically required that a contribution to be deductible be "actually paid," I submit that no idea of constructive payment, by "relation back" of a check later actually paid in a later year or after death, should be allowed to overthrow settled concepts of the law of gift and of deductions allowable to a taxpayer, as here, on a cash basis.

Again, in *Vander Poel, Francis & Co.*, 8 T. C. 407, 410, where the petitioner sought to secure deduction on the basis of constructive payment because of ability of the payees to secure payment, we said "the doctrine of 'constructive receipt' has been applied often \* \* \*. But not so the doctrine of 'constructive payment'," going on to say that the weight of authority is against the doctrine that constructive payment is a necessary corollary to constructive receipt.

The majority view that relation back would cause a gift check to be paid under the statute since 1938 would be equally potent to cause such

gift to be "made" under the prior law, in the year of delivery of check—and no new statute would therefore, on such theory, have been necessary to place the accrual-basis taxpayer in the same position as one on the cash basis. On such relation-back theory, he could accrue the gift by check because made when check was delivered. Yet Congress, surely cognizant that many if not most charitable gifts are by check, not only thought a change of statute necessary to equalize the two classes of taxpayers, but expressly, in the committee report, required actual payment. The only logical conclusion, in my opinion, is that Congress definitely did not regard gift checks as constituting actual payment—because of the settled nature of gift as requiring completion of dominion, which a revocable check did not entail. A check is a promise to make a gift. That the promise is fulfilled by later honoring of the check does not make the mere delivery of check, in a certain year, more than such promise. The majority's suggestion that contributions may be based on consideration is, on the record here, wholly irrelevant, for there is nothing to indicate consideration for the $2,800 check, and as to the $5,000 check the majority only finds that payment was made by reason of a pledge made at a fund-raising dinner—plainly insufficient to show consideration. It can not be gainsaid that here we deal with gifts. I think the proper conclusion depends upon the nature thereof, that Congress in 1938 affirmatively demonstrated that no change in that regard was intended in allowing deductions, and that the sound doctrine announced in the *Dodge* case should not be overruled and abandoned. I, therefore, respectfully dissent.

TURNER, VAN FOSSAN, BLACK, TYSON, and HILL, *JJ.*, agree with this dissent.