ESTATE OF A. BLUESTEIN, DECEASED, FRANK BLUESTEIN, INDE-PENDENT EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 18963. 19384, 23228. Promulgated December 4, 1950.

*Paul Port, Esq.*, for the petitioner.

*D. Louis Bergeron, Esq.*, and *Joseph P. Crowe, Esq.*, for the respondent.

776

782

OPINION.

VAN FOSSAN, *Judge:* The first issue is whether the respondent erred by including in the gross estate all of the assets standing in the decedent's name at his death.

It is appropriate that we summarize the essential facts in order to emphasize the nature of the problem.

The decedent, A. Bluestein, after several unsuccessful business ventures, moved to Corpus Christi, Texas, in 1914 and entered into a partnership to operate a small clothing store. Within a few years the decedent became the sole proprietor. He began this venture with an original capital of $1,000 borrowed on a life insurance policy taken out subsequent to his marriage. The business was successful and it increased substantially over the years. The decedent's wife owned some separate property which, on her death in 1919, she bequeathed to her three sons. She also bequeathed to her sons all her community property (a one-half interest in the mercantile business)

The decedent treated both his wife's separate property (and the proceeds from its sale later) and all of the mercantile business as his own, and although two of the sons managed their father's business after 1925, they did not know that their mother had left them any property or that they had any prior interest in the property accumulated by the decedent. After the decedent's death in 1944, his wife's will was discovered. The son Ed, who had been left nothing in his own right under the will of the decedent, brought suit against his two brothers (both in their own right and one as trustee) who had received under the decedent's will, the business and substantial amounts of other property. The District Court for Jefferson County, Texas, in an unreported decision, found "That all of the property which the said A. Bluestein had in his name or under his control at the time of his death or undertook to dispose of by will was property he had acquired from the proceeds, profits and increases of the community estate owned by himself and his deceased wife, Lena Levy Bluestein, at the time of her death, and that all property which the said A. Bluestein had in his name or under his control at the time of his death is traceable to the community property of himself and his wife, Lena Levy Bluestein, at the time of her death and, therefore [since she bequeathed her share of community property to her sons] was owned in law at the time of said A. Bluestein's death one half by himself and one sixth by each of his said three sons." The court, in its decree, reconciled its above finding with the terms of the will, resulting in the interest of certain of decedent's grandchildren in real estate passing under the will being reduced to a one-half interest. One of these grandchildren subsequently became of age and filed a motion to set aside the judgment previously entered. This proceeding resulted in an unreported declaratory judgment on February 5, 1949, in the District Court of Jefferson County, Texas, by which the judgment of March 1, 1945, was approved, ratified and confirmed. On appeal, this judgment was affirmed by the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas, reported in 220 S. W. (2d) 345 *sub nom. Peggy Born et al.* v. *Ed Bluestein et al.*

The rule has been settled in *Freuler* v. *Helvering*, 291 U. S. 35, that on a question of property rights we are bound by the decision of the State court, if, in that proceeding, there was a real controversy to be settled and in which the facts and issues were fully and properly presented. But, on the other hand, we should not recognize and give effect to the decision of the State court in a proceeding which was "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax."

It is apparent that there was a real controversy in the Texas courts wherein the decedent's property rights were determined; that the

facts and issues were fully presented; and that the proceedings were not collusive in any sense. The instigator of the initial proceeding, Ed Bluestein, gained a one-sixth interest in the mercantile business and most of the other assets standing in the decedent's name at his death, whereas, under the decedent's will he took nothing in his own right. The interests of the other heirs and beneficiaries under the will were proportionately reduced. It follows that as to the property rights involved we are bound by the decision of the Texas courts, and we so hold. *Louise Savage Knapp Trust A*, 46 B. T. A. 846; *Eva U. Townsend*, 5 T. C. 1380.

In the estate tax return filed for the estate of the decedent, it was reported that the decedent was the owner of only 23.84 per cent of the property standing in his name at death and described therein. In the petitioner's brief this computation was described as being "arrived at by charging the decedent's one-half share with withdrawals which he had made through the years." This computation, the petitioner concedes in his brief, is in error for "While the decedent might equitably have been entitled to only 23.84% of the business and other assets referred to in the return, under the applicable laws of property, he was in fact the owner of and his estate is taxable on an undivided one-half interest in the business and other assets." We agree, since this is the substance of the decision of the Texas court which we held above is controlling.

The next issue is subordinate to our holding above. It relates to the income tax liability of the decedent for the period January 1, 1944, to the time of his death on September 18, 1944, and to the income tax liability of the estate during its administration.

The question is whether the decedent and his estate should be taxed on all of the income from the business and other sources, as contended by the respondent. After entry of the judgment on March 1, 1945, Frank Bluestein (the executor of the decedent's estate and, as such, the petitioner herein) and his brothers were advised by accountants to operate the business as a partnership consisting of the estate (having a one-half interest) and the three sons of the decedent (each with a one-sixth interest).[1] Accordingly, although no written agreement was entered into, the three brothers agreed to continue the business and operate it as a partnership. It was agreed that Leon and Frank, who were active in the management, would draw salaries and that the profits and losses would be shared in proportion to their respective interests. Partnership returns were filed for the period from January 1, 1944, to September 18, 1944 (decedent's death), and for the fiscal years ending August 31, 1945, and August 31, 1946, showing division

[1] Two of the brothers, Leon and Frank, were to receive the interest in the business remaining in the estate (i. e., one-fourth each) under the terms of the will as it was altered by the Texas decree, in addition to the one-sixth interest held to have been vested in each of them.

of the income from the store business and other assets after deducting all expenses.

It would appear that the result on the first issue to the effect that the decedent owned but one-half of the assets standing in his name at death and the three sons, each being vested with a one-sixth interest in the business, should be dispositive of the question here. But the respondent argues that the partnership entered into between the three brothers and their father's estate and the distribution of income made thereunder are not valid for income tax purposes. This argument avoids the real question of who owned the properties involved and in what proportion, and following that, who received and was entitled to the income from the business. The Texas decree determined that the decedent owned only one-half of the business and the other assets standing in his name and that he held his sons' interests in trust for them. It follows that only the income from the decedent's one-half interest should be taxed to him for the period January 1, 1944, to the date of his death on September 18, 1944, and to his estate for the period before us when the estate was in administration, *viz*, the fiscal years ending August 31, 1945, and August 31, 1946. The income accruing to the sons from their interests during the above periods was paid or credited to them and the decedent or his estate had no legal claim to it.

In his argument concerning the partnership aspect, respondent cites among others, the cases of *Commissioner* v. *Culbertson*, 337 U. S. 733; *Commissioner* v. *Tower*, 327 U. S. 280; *Lusthaus* v. *Commissioner*, 327 U. S. 293. If any generalization can be made on the subject of partnerships in taxation, it might be that those cases, along with others familiar in the field, are concerned before anything else with the question: To whom was the money in dispute income? The validity of a partnership is only one, and in many cases only a secondary, aspect of the question. In any event, if the matter of validity of a partnership among co-owners is now in question, it is not new and pre-dates the contemporary cases relied on by the respondent. The general rule is familiar that co-ownership does not of itself create a partnership. It also appears to be the rule, however, that where heirs, devisees or legatees elect to continue a business, contribute for that purpose their share, and receive profits accordingly, the partnership relation is established. See generally 150 A. L. R. 1033 *et seq*. We conclude that it is not necessary to decide the question raised by the respondent of the validity of the partnership. Some comment, however, appeared to be indicated in view of the respondent's extended presentation.

The third issue concerns the charitable contributions made by the mercantile business, "Bluestein's." The respondent has restored to the gross income of the estate for each of the periods reported on herein, the charitable deductions made by the business, owned by the estate and the three brothers pursuant to the State decree.

The respondent's explanation for so doing is set forth in his brief as follows:

Sec. 23 (o), *supra*, specifically provides for the allowance of a deduction for contributions not to exceed fifteen per cent of adjusted gross income to individuals; while Sec. 162, *supra*, provides that the net income of an estate in administration shall be computed in the same manner as the income of an individual, except that in lieu of the deduction for contributions limited to fifteen per cent of gross income as provided by Sec. 23 (o), *supra*, the estate shall be allowed as a deduction and without limitation all contributions paid pursuant to the provisions of the will. The decedent's will made no provisions for charitable contributions. The contributions here involved were paid by "Bluestein's" in normal course of business. Therefore, such contributions are not deductible. See *Estate of Modie J. Spiegel* (1949) 12 T. C. 524.

The respondent takes the same position here as he did without success in *Estate of Aaron Lowenstein*, 12 T. C. 694, affd. (CA–5), July 7, 1950, where we said:

As to the deductibility of the charitable gifts made by the partnership, the respondent takes the position that, since charitable gifts are deductible by an estate only where made pursuant "to the terms of the will or deed creating the trust," as provided in section 162, Internal Revenue Code, and since the decedent's will contained no provision for charitable gifts, the deduction cannot be allowed to the decedent's estate.

The charitable gifts were made not by the decedent's estate, but by the partnership as a business unit. They were deducted in the partnership returns as ordinary business expenses and were allowed to the other two partners. It is not stipulated or otherwise shown whether the respondent allowed the deduction to the active partners as ordinary and necessary business expenses, as claimed in the partnership returns, or as charitable gifts by the individual partners, under section 23 (o), Internal Revenue Code. In any event, we think that the deduction should have been allowed to the decedent's estate, as well as to the active partners. The fact is that the estate never received the amount representing its portion of the charitable gifts. They were deducted from partnership income before its share of the earnings was ever determined. Under the partnership agreement the estate was entitled to receive only its one-third share of the distributable earnings; and, since the active partners were charged with the management of the business, it might be said that the charitable gifts they made were actually made pursuant to the partnership agreement. What the respondent has done, in effect, is to add to the petitioner's distributable partnership income one-third of the charitable gifts, which is never received. We think that the entire amount of the gifts should have been allowed as a deduction in computing the distributable income.

In our opinion, the *Lowenstein* case is not distinguishable in principle and we adhere to that view here. Therefore, our holding on this question is that in the computation of the gross income of the estate a deduction should be allowed for its share of the charitable contributions made by the business.

The next issue is whether the respondent erred in computing the good will of the business known as "Bluestein's" at $455,163.40 as of the decedent's death.

The respondent arrived at this figure representing good will by

application of the formula provided in A. R. M. 34, 2 C. B. 31. This formula provides a method of valuation based upon the average net tangible assets and the net earnings of the business over a prior period of years which fairly reflect past earnings. *White & Wells Co.* v. *Commissioner*, 50 Fed. (2d) 120. It involves the selection of a rate representing a reasonable return on the average net tangible assets and the selection of a rate at which any excess earnings attributable to intangibles may be capitalized.

As set forth in detail in our Findings of Fact, the respondent averaged the earnings of the business for the years 1938 through 1944 at a figure of $122,105.15 from which he subtracted 10 per cent of $310,-724.70 as a fair return on an average invested capital of that amount. This left a figure of "excess earnings" of $91,032.68 which he capitalized at 20 per cent, arriving at good will of $455,163.40.

The valuation of good will has been the topic of exhaustive judicial pronouncements and we see no need for repetition of the background material. See in this connection, *D. K. MacDonald*, 3 T. C. 720. It is important to point out, however, for the purposes of the discussion to follow, that in our opinion the emphasis in valuation of good will should be placed on the relation between the tangible assets and profits but only to the extent that those profits would survive a change in the management of the business. In attempting to place a value on the good will of a business, it is necessary, therefore, to place one's self in the position of a purchaser of the business and answer the question—How much am I willing to pay for this salable asset, the ability of this business to earn *for me*, profits over and above a fair return on the tangible assets? It is important to remember then, that when the purchaser of a business pays a price for good will, he is not paying for the profits in the past in excess of a fair return on tangibles, but for those profits of the future.

We have considered in detail each of the points raised by the petitioner including: the outmoded nature of the premises occupied by the business; the relatively low rent charged the business by the decedent, who owned the building; the effect on the business of its location in Port Arthur, Texas, a city which in turn was affected by increased employment during the war years; the stores competing with the subject business; the apparent competence and efficiency of the business management and the effect on profits of the prevailing "seller's market" during the war years. We find that all of these points are valid considerations in an attempt to reach a valuation of the good will of the business and have a factual basis in the record. But they are not in any combination sufficient to sustain the petitioner in his contention that the good will of the business was nil. On the other hand, we think that the respondent's determination of $455,163.40 was clearly excessive.

After a careful consideration of all the facts of record, we have found that, as of the date of the decedent's death, September 18, 1944, the business known as "Bluestein's" had an asset of good will in the amount of $69,640.

The respondent, in arriving at the decedent's gross estate, included therein the total good will assigned to the business. Inasmuch as we have held above that only one-half of the assets standing in the decedent's name at death, including the business, should be included in his gross estate, it follows that only one-half of the value of good will attributable to the business should be so included.

The last issue is whether certain court costs are expenses of administration of the decedent's estate and properly deductible from the gross estate under the provisions of section 812 (b) of the Code.

The parties stipulated that in addition to the attorney's and accountant's fees listed in the estate tax return, the amount of $17,500 is also a proper deduction for such services in the computation of the estate tax due. The controversy concerns court costs in the amount of $5,029.20 incurred in the State court action referred to on the first issue. The Texas District Court ordered these expenses be taxed as court costs to be paid from the estate of the decedent as an expense of administration. Section 812 (b) provides for a deduction from the gross estate for "administration expenses * * * allowed by the laws of the jurisdiction * * * under which the estate is being administered * * *."

We are of the opinion that the expenses so incurred and taxed as court costs in connection with the litigation above referred to were incidental to the administration of the estate and constitute allowable deductions in computing the net estate. See *Estate of Wilbur B. Ruthrauff*, 9 T. C. 418.

*Decisions will be entered under Rule 50.*