SOL LUIS DESCARTES, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; RAMÓN ARBONA FRONTERA, Intervener.

No. 274. Argued May 1, 1952.—Decided May 6, 1952.

Víctor Gutiérrez Franqui, Attorney General, and Manuel J. Medina Aymat, Assistant Attorney General, for petitioner. J. J. Ortiz Alibrán and Oscar Souffront for intervener, plaintiff in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

The issue here is whether Ramón Arbona Frontera was entitled to claim in his income tax returns for 1944 and 1945 deductions for gifts he made to the Catholic Church. The Treasurer notified the taxpayer with deficiencies for those years on the theory that the gifts were not made in 1944 and 1945. After a trial on the merits, the Tax Court disagreed with the Treasurer and entered judgment for the taxpayer. We granted certiorari to review the decision of the Tax Court.

There is no dispute as to the facts. In 1944 the Bishop of Ponce solicited a contribution from Arbona for an orphanage to be established in Mayagüez. In 1944 Arbona deposited $6,000 in a special bank account entitled "Ramón Arbona, Miguel Frontera, Antonio Frontera or any of them in trust." He then advised the Bishop of Ponce that the said money was at his disposition. It was deposited as described in order that a check could be drawn in favor of the church at any time if one or more of the persons named was out of Puerto Rico when the church requested the money. In 1945 an additional deposit of $4,000 was made in the same account for the same purpose.

In 1947, at the request of the church, Antonio Frontera issued a check for $10,000 against the account in favor of the Bishop of Ponce. This check recited that it was "A gift to the Educational and Religious Institution Casa Manresa." The money was paid to the church by the bank in 1947 and

the account closed. The sum of $10,000 had remained intact in the special account until withdrawn as aforesaid. The money remained in the account until 1947 because the orphanage was never constructed. The check was issued in 1947 when the church decided to use the money for a different educational project.

Section 16(a)(10) of the Income Tax Act provides that certain charitable contributions "made within the taxable year" may be deducted by an individual in computing his net income.[1] The Tax Court conceded that an offer or even a binding promise to make a charitable contribution is not sufficient to justify a deduction. The rule, as the Tax Court admits, is that the deduction is permitted only in the year the contribution is in fact paid. 5 Mertens, Law of Federal Income Taxation, p. 495, and cases cited.

However, according to the Tax Court, "The plaintiff in 1944 and 1945 went a little further than promising or obligating himself to make a contribution to the catholic church. As a matter of fact it parted with the sums deposited, and with their use and benefit, depositing them in a trust account at the disposition of the donee. For reasons of its own, the latter did not use the gift immediately or at least in the same taxable year, but the situation would not have been substantially different if the plaintiff in 1944 and 1945 had delivered the checks for $6,000 and $4,000, respectively, directly to the Bishop and the latter had immediately deposited them in the trust fund until the moment arrived to use them for the purpose for which they were given."

We cannot agree with the reasoning of the Tax Court. This deposit did not create a trust as such of the money deposited in favor of the church. *Cf.* § 836, Civil Code, 1930 ed.; *Belaval* v. *Court of Eminent Domain*, 71 P.R.R. 246. Indeed, the taxpayer does not argue to the contrary here.

---

[1] Act No. 74, Laws of Puerto Rico, 1925, as amended by Act No. 31, Laws of Puerto Rico, 1941. And see Act No. 10, Laws of Puerto Rico, 1947, p. 22.

In his testimony the taxpayer conceded that he could have withdrawn this money from the account for some other purpose; he stated only that "morally he could not".

The fact that the money was actually paid out to the church does not affect our problem. This would undoubtedly enable the taxpayer to claim a deduction for the year 1947, when the money was paid to the church. But here no check was issued until 1947. And prior thereto no trust or other device was created whereby the money was irrevocably placed beyond the control of the taxpayer for the benefit of the donee. Even though as here the taxpayer places the money in a special account and earmarks it for the donee, this does not constitute payment while he still retains control of the money and may legally divert it to some other purpose of his own. We therefore cannot hold that the taxpayer paid the $10,000 to the church in 1944 and 1945. 5 Mertens, *supra*, p. 495; *Estate of Modie J. Spiegel*, 12 *T. C.* 524 (1949), and cases cited therein.

The judgment of the Tax Court will be reversed and a new judgment entered dismissing the complaint as to the question involved herein.