MaddeN, Judge,
delivered the opinion of the court:
The plaintiff sues to recover income taxes paid by him for the year 1937. He asserts that by mistake he paid $21,639.58 when he should have paid only $7,662.36. His alleged mistake was with regard to income from two sources, which we will treat separately.
By an agreement dated January 16, 1935, between the plaintiff and a group of attorneys in Minnesota, which Minnesota group was referred to in the agreement as the “Pool,” the plaintiff was retained as an associate attorney in the matter of procuring from the Government compensation for losses resulting from a fire which occurred in 1918 and which was allegedly caused by a railroad which was then being operated by the Government. The agreement provided that the plaintiff would receive 10 percent of the net collections received by the Pool, i. e., 10 percent of the gross collections less the Pool’s expenses in the collection.
The Pool, in order to postpone its income taxes, adopted a fiscal year ending on May 31,1936, and on the same date in subsequent years. The Pool’s accountant advised the plaintiff in 1937 that his share of the net income of the Pool up to May 31, 1937, was $29,000. The plaintiff, in 1937, received only $11,000 of the $29,000. He included the entire $29,000 in his income tax return and paid taxes thereon. He claims that only the $11,000 actually received by him was taxable income to him in 1937.
The plaintiff takes the position that as a taxpayer on a cash basis, nothing was taxable income to him unless he received it during the taxable year. This position is unten *167 able. Money wbicb becomes available to a cash basis taxpayer in the taxable year is taxable income, whether he reduces it to possession or not. If it were not so, a taxpayer could juggle his income almost at will between taxable years whenever it would be of advantage to him to do so. The entire $29,000 was, so far as appears, available to the plaintiff in 1937. The Pool had closed its books on its fiscal year on May 31,1937. The collections were in, the expenses were computed, and the plaintiff’s agreed share of the money in hand was $29,000. No reason appears why it could not have been collected by asking for it. We conclude that the plaintiff did not make a mistake in including it in his income for 1937.
We treat now the other branch of the plaintiff’s claim. During 1937 he was a lobbyist for the United States Cane Sugar Refiners’ Association, active in attempting to secure legislation favorable to the interests of the members of the Association. He received $56,750 from the Association during the year. The plaintiff, when he made his income tax return for the year, was of the opinion that expenses in connection with lobbying were not allowable deductions. He therefore deducted only $13,000, representing sums paid over by him to individuals who, in his opinion, would acknowledge the receipt of this amount.
The plaintiff, in an amended return filed in 1945 in connection with his claim for refund, and in this suit, asserts that $27,000 of the $56,750 which he received from the Refiners’ Association represented expenses, deductible as ordinary and necessary business expenses. The only basis for the round figure of $27,000 seems to be that in January 1945, the plaintiff was told by Mr. Ellsworth Bunker, the Chairman of the Refiners’ Association, that $27,000 of the amount paid the plaintiff in 1947 was for expenses. This statement séems to us to have no significance. If the Association, in its bookkeeping, so divided the payments, that would not make the payments any the less income to the plaintiff except to the extent that he paid the money out for deductible expenses. The plaintiff, not the Association, would know what he did with the money which the Association paid him.
*168 The only useful evidence, then, is the plaintiff’s recollection, without benefit of records, of what he did with the alleged expense money. He testified that, in addition to the $18,000 which he took, in his original return, as a deduction for. money paid to others, he paid $4,000 more to others whom he did not identify. It will be remembered that he took the $13,000 deduction because that money was paid to individuals who, he thought, would acknowledge the receipt of that amount. The $4,000 now testified to must represent payments to persons who, in his opinion in 1938 when he prepared his 1937 return, would have denied the receipt of the asserted payments. To permit the deduction of such payments as ordinary and necessary business expenses would be an obvious violation of public policy.
The commissioner of this court has found that there is satisfactory proof that $2,505, one-half of the plaintiff’s hotel bill at the Shoreham Hotel during the five months that lobbying for the sugar legislation was active, was attributable to the lobbying activity and was a deductible expense. Although we have grave doubts, we do not disturb that finding.
The plaintiff is entitled to recover, with interest as provided by law. Entry of judgment will be suspended to await the filing of a stipulation by the parties showing the amount due the plaintiff, in accordance with our findings of fact and opinion.
LaRamoke, Judge; Whitaker, Judge; Littleton, Judge; and JONES, Chief Judge, concur.
It is so ordered.
FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff, Loring M. Black, is an attorney at law, duly admitted to practice before the Supreme Court of the United States, the Courts of the District of Columbia, the Courts of the State of New York, and the United States Court of *169 Claims; and various departments of the Federal Government. His office and residence are in the District of Columbia.
By petition filed June 13, 1950, plaintiff seeks to recover claimed overpayments of taxes on his income for the calendar year 1937. Paragraphs 5, 6,7, 8 and 12 of the petition have been withdrawn by the plaintiff.
2. During the year 1937, plaintiff was engaged in the practice of law in Washington, D. C., and represented, among others, the National Sugar Befining Company, the United States Cane Sugar Befiners’ Association, and a group of attorneys in northern Minnesota, sometimes referred to as “The Lawyers Syndicate”, who, in turn, represented some 5,181 claimants for relief through the Congress by reason of fire loss and damages.
3. On or about March 15,1938, plaintiff filed his individual income tax return for the calendar year 1937 with the Collector of Internal Bevenue at Baltimore, Maryland, reporting his gross income from professional services of approximately $94,296. The defendant was unable to locate and produce the original of this return and the plaintiff was unable to locate and produce his copy of the same.
4. Assessments were made upon plaintiff’s 1937 income in the following amounts:
April 13, 1938
Taxes determined_$21,616. 50
Interest accrued_ 23.08
- $21,639.58
May 1939 Supp.
Add’l taxes_ 645.07
Interest accrued_ 46.32
- 691.39
Feb. 1950 Supp. Add’l Taxes_ 426.09
Total assessments_ $22,757.06
5. The foregoing assessments were transferred from the Collector’s office at Baltimore to the First District of New York, and the following payments were made through the latter office:

*170

Interest for delay in payments was waived and the account contained no due balance.
6. On February 21, 1945, plaintiff executed a claim for refund of $13,954.14 of his 1937 tax assessments, which was received in the Collector’s office at the Third District of New York February 24,1945.
Plaintiff had discovered that his original return for the year 1937 was, in his opinion, erroneously computed in that he had included therein accrued income for 1937 from the “Lawyers Syndicate” whereas he had reported his income on a cash basis, and also by his failure to take all authorized deductions upon the mistaken belief that he could not take such deductions while acting as a lobbyist. An amended return was prepared for 1937 and attached to his claim for refund in 1945.
By registered letter dated June 14, 1948, plaintiff was advised of the disallowance in full of his claim for refund of 1937 taxes, as well as claims for 1936 and 1938.
7. The following items represent the figures in the original and amended income tax returns of Loring M. Black, filed *171 for the calendar year 1937, as reconstructed from the available evidence in this case:

8. Plaintiff’s amended tax return for 1937 included income of $11,000 received from a group of attorneys of Minnesota for his services as an associate attorney, in lieu of $29,000 reported in his original return which was the amount that had accrued to plaintiff by reason of net collections from fire loss claimants.
*172 Under an agreement dated January 16, 1935, between plaintiff and a group of attorneys in Minnesota, associated together under an agreement between themselves, and referred to in the said agreement as the “Pool”, plaintiff was retained as an associate attorney in the matter of procuring from the Government of the United States relief for loss sustained by a fire of October 12, 1918, for claimants represented by the “Pool”. The agreement provided that plaintiff would receive 10 percent of the net collections received by the “Pool”, being 10 percent of gross collections less all disbursements and expenses of the “Pool”; and was contingent upon such collections from the claimants.
The agreement states in part “1 — The parties of the first part [the pool] hereby retain the party of the second part [plaintiff] as an associate attorney . . .”, and at no place is the plaintiff referred to as a member or party to the pool of attorneys who represented the claimants in Minnesota.
9. By letter of December 28,1936, L. B. Graving, C. P. A., an accountant for the “Pool”, wrote plaintiff in part as follows:
The income tax law requires that where two or more individuals are engaged in a joint venture the income and expenses of the joint venture are to be reported to the Government on Form 1065 which is a partnership return * * * For want of a better name we called your joint venture with Mr. Mullin, Mr. Burdick and others “The Lawyers Syndicate”, % Hanford F. Cox, Cloquet, Minnesota. We determined that on May 31, 1936, this joint venture had received income and incurred expense for a period of less than twelve months and we therefore established May 31st as the annual closing date. Such closing was fixed solely for tax purposes because it would enable the joint venture to postpone the reporting of any income received in 1936 after May 31st to the return which will be filed for the period from June 1, 1936 to May 31, 1937. The return which we filed for the period ending May 31,1936, disclosed your share of the net income to be $27,005.73. If you file your personal income tax returns on a calendar year basis the above amount should be reported by you as income in your 1936 return. You will ignore the actual cash withdrawn by you during the year 1936 which will *173 very likely be considerably greater than the figure given herein. However, such excess withdrawals will be presumed to have been made against the net income which will be disclosed on the return of the joint venture for the period ending May 31,1937.
Plaintiff received a similar report for the fiscal year ending May 31,1937, of the pool’s collections and disbursements, with the advice that plaintiff’s share was $29,000. Plaintiff actually received $11,000 paid to him by the “Pool” during 1937.
10. During 1937 plaintiff was engaged in activities as a “lobbyist” in the interests of the United States Cane Sugar Refiners’ Association. He received the cooperation of certain labor groups and the midwest beet sugar interests, who had similar interests in obtaining favorable legislation.
During 1937, plaintiff received $56,750 from the United States Cane Sugar Refiners’ Association, but in turn paid out to cooperating parties substantial portions of the sum received. Believing that expenses in connection with lobbying activities were not allowable deductions, plaintiff only claimed deductions of $13,000 for sums he paid over to individuals who, in his opinion, would acknowledge the receipt of this amount.
In submitting his amended return for 1937, upon which his claim for refund was predicated, plaintiff claimed that approximately $27,000 of the amounts received from the United States Cane Sugar Refiners’ Association represented refund of expense, and he took the flat sum of $27,000 as a deduction in his amended return. The evidence submitted in support of this item of deduction was largely from plaintiff’s memory, and $11,495 is not deemed to be satisfactorily proved.
The plaintiff reasonably expended the sum of $15,505 in payments to cooperating individuals and expenses in connection with his services for the United States Cane Sugar Refiners’ Association of which $13,000 was deducted in his original return.
11. Plaintiff’s net income for 1937, on a cash basis, was $78,576.37, computed as follows:
*174 Income from business or profession-$94,296.00
Other income_ 1,104.50
Total_--- 95,400. 50

Deductions:

Payments and expense on sugar clients_ 15,505.00
Other business expense- 259.13
Contributions, interest and taxes- 1,060.00
Total_ 16,824.13
Net income_ 78, 576.37
CONCLUSION or law
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is entitled to recover, with interest as provided by law. Entry of judgment is suspended to await the filing of a stipulation by the parties showing the amount due.
In this case (No. 49686) in accordance with the opinion of the court and on a stipulation by the parties showing the amount due thereunder, on June 7, 1955, judgment for the plaintiff was entered for $2,418.12.