John J. NANGLE
v.
**The UNITED STATES.**
No. 121–54.

United States Court of Claims.

Decided Nov. 7, 1956.

Don O. Russell, St. Louis, Mo., for plaintiff.

David W. Richter, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe and David R. Frazer, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

The plaintiff sues to recover Federal income taxes for the combined calendar years 1942 and 1943. The sole question which the court must now determine is in what year or years the plaintiff was required to report for tax purposes two items, each in the amount of $25,000, and each representing part payment of a court allowance to plaintiff of fees for services as a special master.

During the years 1942 and 1943 the plaintiff, an attorney, resided in St. Louis, Missouri, and filed his Federal income tax returns for those years with the Collector of Internal Revenue for the First District of Missouri. For each of the 2 years he reported income on a cash receipt basis.

In 1938 the circuit court of the city of St. Louis appointed the plaintiff as a special master in litigation involving the trust estate of Hazlett Kyle Campbell, deceased, and authorized and directed him to determine the lawful heirs of the decedent. After performing his duties as special master the plaintiff filed his final report on March 3, 1941.

On June 19, 1941, the circuit court entered an order to the effect that plaintiff was entitled to an allowance of $50,000

for services rendered by him in connection with the trust estate and that this $50,000, together with certain earlier allowances not now in issue, would, when paid, constitute full payment to plaintiff for all services rendered by him.[1]

Some of the parties to the litigation, including the public administrator, sought an appeal from the circuit court's order. When the circuit court denied the right of appeal, the interested parties filed mandamus proceedings in the Supreme Court of Missouri.

After the mandamus proceedings had been filed the cotrustees of the Campbell estate, Allen C. Orrick and the St. Louis Union Trust Company, were advised by their counsel to limit disbursements from the trust fund to items necessary for the preservation and protection of the estate.

Following the issuance of the circuit court's order of June 19, 1941, allowing him $50,000, plaintiff attempted to obtain payment of all or part of that fee by addressing both oral and written requests to the attorneys who represented the trustees of the Campbell estate. One written request dated September 15, 1941, stated that an advance of twenty or twenty-five thousand dollars of the fee would be helpful to plaintiff because of income tax considerations.

On December 30, 1941, plaintiff addressed a letter to one of the attorneys representing the trustees, again asking payment of his fee before January 1, 1942, to avoid " * * * the delay into next year * * *."

The funds of the St. Louis Union Trust Company, including the Campbell trust funds, were maintained on deposit in the First National Bank of St. Louis. Disbursements from the Campbell trust funds were made by checks drawn by the Union Trust Company on the First National Bank. Before the checks were issued it was necessary that they be authorized by the trustees. Checks for payments out of the Campbell trust funds were prepared by appropriate employees or officials of the Union Trust Company upon instructions from Mr. William Frazier who was the trust officer for Union Trust and administrative officer for the Campbell estate. Depending upon Mr. Frazier's instructions such checks were either mailed to the payees or routed to him for delivery. In accordance with these procedures a check for $25,000, payable to plaintiff, was prepared, dated December 31, 1941, and on that date delivered to Mr. Frazier.

On the same day Mr. Frazier conferred with the Union Trust Company's cotrustee, Mr. Orrick, and with one of the attorneys representing the trustees. Later, on that day, the plaintiff called at Mr. Frazier's office and was shown the check. An understanding was reached between the plaintiff and Mr. Frazier to the effect that the check would remain in Mr. Frazier's possession. Plaintiff then endorsed the check in blank, signed a receipt certifying that payment of $25,000 had been made, and returned both the check and the receipt to Mr. Frazier.

At the time of the meeting between Mr. Frazier and plaintiff the mandamus proceedings were still pending before the Supreme Court of Missouri and Mr. Frazier, having been advised by counsel, did not intend to deliver the check to plaintiff. The check remained in the possession of the Union Trust Company until May 26, 1942, on which date it was deposited in the First National Bank to the credit of the Campbell estate.

In 1942 the plaintiff continued his efforts to obtain payment of his fee from the Campbell trustees, again directing his requests to the trustees' counsel. On August 8, 1942, he wrote a letter in which he conveyed the impression that he would bring suit against the trustees if the fee was not paid.

Thereafter the trustees filed a motion in the cause pending in the Supreme Court of Missouri requesting the court to authorize the trustees to pay certain

---

1. The pertinent part of the circuit court's order is quoted in our finding 3.

allowances, including the plaintiff's fee, pending decision of the case on its merits. The Supreme Court "sustained" this motion on November 12, 1942.

On November 25, 1942, the Union Trust Company issued a check for $25,000 drawn on the First National Bank and payable to plaintiff. The receipt attached to the check indicated that the check was payment for services as a special master and that a check for these services had been originally issued on December 31, 1941. In issuing the check dated November 25, 1942, Mr. Frazier intended it as a replacement for the check dated December 31, 1941. Plaintiff deposited the second check and it was paid by the First National Bank on November 27, 1942.

On January 4, 1943, the Union Trust Company issued another check for $25,000 payable to plaintiff. The receipt attached to the check recited that the check was for services rendered by plaintiff as a special master. Plaintiff deposited this check and it was paid by the First National Bank on January 5, 1943.

In his income tax return for the calendar year 1942 plaintiff reported as income the $25,000 represented by the check issued on November 25, 1942, and paid taxes accordingly. In his tax return for the calendar year 1943 he reported as income the $25,000 represented by the check issued on January 4, 1942, and paid taxes accordingly.

The Commissioner of Internal Revenue subsequently examined plaintiff's income tax returns for 1941, 1942, and 1943 and determined that the entire $50,000 paid to the plaintiff under the circuit court order of June 19, 1941, was available to and constructively received by him in the calendar year 1942. Thereupon deficiency income taxes were assessed against and collected from the plaintiff for the combined years 1942 and 1943. It is these taxes which plaintiff now seeks to recover.

Plaintiff's first contention is that the check dated December 31, 1941, was actually delivered to him on that date and was thus taxable income to him for the calendar year 1941. Defendant takes the position that the check constituted neither actual nor constructive income to plaintiff in 1941 since plaintiff in reality received nothing.

Section 42 of the Internal Revenue Code of 1939, 26 U.S.C. (1952 Ed.) § 42(a), which was in effect at all times pertinent to plaintiff's claim, provides in part as follows:

"The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period."

Treasury Regulations 111, § 19.42–2 (1940 Supp. C.F.R.), promulgated under the Internal Revenue Code, provides as follows:

"*Income Not Reduced to Possession.*

"Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited or set apart to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made, and must be made available to him so that it may be drawn at any time, and its receipt brought within his own control and disposition. A book entry, if made, should indicate an absolute transfer from one account to another."

 It is the conclusion of the court that the plaintiff received no part of his fee for services performed as special master during the calendar year 1941 because the check dated December 31, 1941, was never actually deliv-

ered to him and no funds were available to him during that year.

At the time plaintiff met with Mr. Frazier on December 31, 1941, his right to receive the fee as special master was not legally settled since mandamus proceedings from the circuit court's order awarding him the fee had been filed and were pending in the Supreme Court of Missouri. Mr. Frazier had been advised by counsel to limit disbursements from the trust funds to items necessary for the protection and preservation of the estate and he had no intention of paying plaintiff any part of the fee or of allowing plaintiff to retain possession of the check. It was only after the parties had reached an understanding to the effect that the check would remain in Mr. Frazier's possession that plaintiff was permitted to endorse it and sign the accompanying receipt.

Plaintiff points to certain book entries made in connection with the Campbell trust estate to support his position that the check dated December 31, 1941, was a partial payment of his fee on that date. However, these entries are contrary to the realities of the situation. It is clear from the evidence before the court that no funds were available to the plaintiff on December 31, 1941, and that he received nothing on that date. In the light of all the facts and circumstances it is obvious that the entire transaction was merely an effort to accommodate plaintiff for tax purposes. Since in reality plaintiff received nothing in 1941, we hold that no part of his fee as special master was taxable income during that year.

Plaintiff cites Kahler v. Commissioner, 18 T.C. 31, and Estate of Spiegel v. Commissioner, 12 T.C. 524, in support of his contention that the check dated December 31, 1941, was taxable income to him in 1941. Neither of these cases is in point since the checks involved therein were actually delivered without qualification or restriction. Such was not the situation in the present case.

█ Plaintiff's second contention is that the check for $25,000 received on January 4, 1943, was income to him for the calendar year 1943. It is the Government's position that the payment of this amount on January 4, 1943, did not create income to the plaintiff in 1943 because the funds were available to him in 1942 and were constructively received by him during that year.

A somewhat similar problem was before this court in the case of Black v. United States, 129 F.Supp. 956, 131 Ct. Cl. 165. In that case the plaintiff became associated with a group of attorneys who referred to themselves as the "Pool". The agreement of association provided that the plaintiff would receive 10 percent of the net collections received by the Pool. Plaintiff was advised by the Pool's accountant that his share of the net income up to May 31, 1937, was $29,000. Plaintiff actually received $11,000 in 1937, but included the entire $29,000 in his income tax return for that year and paid taxes thereon. He subsequently sued for a refund in this court, claiming that he should have been taxed only upon the $11,000 actually received in 1937 since he was on a cash basis. In rejecting the plaintiff's contention the court made the following statement beginning 129 F.Supp. 956, 131 Ct.Cl. at page 166:

"The plaintiff takes the position that as a taxpayer on a cash basis, nothing was taxable income to him unless he received it during the taxable year. This position is untenable. Money which becomes available to a cash basis taxpayer in the taxable year is taxable income, whether he reduces it to possession or not. If it were not so, a taxpayer could juggle his income almost at will between taxable years whenever it would be of advantage to him to do so. The entire $29,000 was, so far as appears, available to the plaintiff in 1937. The Pool had closed its books on its fiscal year on May 31, 1937. The collections were in, the expenses were computed, and the plaintiff's agreed share of the money in hand was $29,000. No

reason appears why it could not have been collected by asking for it. We conclude that the plaintiff did not make a mistake in including it in his income for 1937."

In the instant case there appears to be no reason why the plaintiff could not have collected his entire fee in November or December of 1942 by merely asking for it. The amount of the fee, $50,000, had been set by the circuit court's order of June 19, 1941. When the Supreme Court of Missouri on November 12, 1942, gave the trustees authority to make the payment, funds were available in the trust estate with which to make payment. The evidence does not reveal that the plaintiff ever made demand after November 12, 1942, or that the trustees refused or withheld payment upon demand, and there is nothing in the record to indicate that the trustees had any reason for withholding payment after the Supreme Court had acted. There is no reason to doubt that payment would have been made had plaintiff made demand.

One other factor also supports the conclusion that the entire $50,000 was available to plaintiff in 1942. When plaintiff received interest for the delay in the payment of his fee, the interest was paid on the entire $50,000 from June 19, 1941, the date of the circuit court order establishing the amount, to November 25, 1942, the date the trustees paid the plaintiff the first $25,000. Plaintiff received no interest after November 25, 1942. This fact further indicates that the full amount of the fee was available to plaintiff on November 25, 1942, and that the trustees would have paid him the entire $50,000 if he had asked for it.

The present case falls within the scope of the court's decision in the Black case, supra. Since the entire fee was available to the plaintiff in 1942 and could have been obtained upon demand, we hold that the full $50,000 was taxable income to the plaintiff in 1942. The Commissioner of Internal Revenue was correct in so ruling and the plaintiff's petition will be dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.

Matter of the Petition of The BAKER-WHITELEY TOWING CO., as owner of THE HOLLAND, for exoneration from or limitation of liability.

No. 3851.

United States District Court
D. Maryland.
Nov. 2, 1956.

